No. 69,961

STATE OF KANSAS, *Appellee*, v. JONATHAN W. BAFFORD, *Appellant.*

(879 P.2d 613)

Opinion filed August 17, 1994.

*Thomas Jacquinot*, special appellate defender, of Kansas Defender Project, of Lawrence, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, and *Elizabeth Cateforis*, student intern, of Lawrence, were with him on the briefs for appellant.

*Kevin C. Fletcher*, first assistant county attorney, argued the cause, and *Timothy J. Chambers*, county attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: We are required to interpret K.S.A. 1992 Supp. 22-3424(4) in resolving Jonathan W. Bafford's claim of error in his sentencing procedure. Bafford asserts that he is entitled to re-sentencing because the trial judge, before imposing sentence, did not personally ask him if he wished to present evidence in mitigation of his punishment. Bafford was charged with aggravated robbery, K.S.A. 21-3427; aggravated assault, K.S.A. 21-3410; and aggravated assault of a law enforcement officer, K.S.A. 21-3411. He was convicted of aggravated robbery and found not guilty on

the aggravated assault charges. Speedy trial and sufficiency of the evidence issues also are raised. Our jurisdiction is under K.S.A. 1992 Supp. 22-3601(b)(1) (a direct appeal when maximum sentence of life imprisonment is imposed).

We affirm Bafford's conviction and remand for resentencing.

### Facts

Bafford walked into a Zip Trip convenience store in Hutchinson and confronted the store manager, Geneva Downing, with an eight-inch serrated kitchen knife. She stated that, in response, she

"just stood there and looked at him, and he said I need that cash register. And I said no, and he looked at me again. He just started throwing the cigarette racks off of my counter and I reached for the phone and he said this is serious and he grabbed the register."

Bafford prevented Downing from phoning the police. He cut the cash register cord with the knife and ran out the door carrying the cash register. Two guards from the Hutchinson Correctional Facility took up the chase. One managed to knock the cash register from Bafford's arms. Bafford, when initially stopped, turned around, held the knife towards one of the officers, and said, "I'll cut you, mother fucker, I'll cut you. I'm a bad boy from Wichita and I'm headed for where you work." He fought with the officers as they attempted to search and handcuff him. His behavior while being transported to the police station was erratic. An officer testified that Bafford was under the influence of alcohol, drugs, or both. Bafford had a history of behavioral and mental health problems. Prior to trial, he twice was determined to be incompetent. At trial, he relied on an insanity defense.

Bafford raised the speedy trial issue by filing a motion to dismiss based on the alleged failure of the State to bring him to trial within 90 days of his arraignment, a requirement under K.S.A. 22-3402. The trial court denied the motion.

### Discussion
### Mitigation of Punishment Under K.S.A. 1992 Supp. 22-3424(4)

Our standard of review on the sentencing issue is harmless error. "[E]rrors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining,

when substantial justice has been done, do not require reversal." *State v. Mitchell*, 234 Kan. 185, 196, 672 P.2d 1 (1983). K.S.A. 1992 Supp. 22-3424(4) codifies a defendant's right to present evidence in mitigation of punishment. *State v. Spencer*, 252 Kan. 186, 188, 843 P.2d 236 (1992). (A detailed history of the right to allocution and of the relationship between K.S.A. 22-3422, the traditional allocution statute, and 22-3424[4] appears in *State v. Webb*, 242 Kan. 519, 522-28, 748 P.2d 875 [1988].)

K.S.A. 1992 Supp. 22-3424(4) states:

"(4) Before imposing sentence the court shall:

. . . .

"(c) address the defendant personally and ask the defendant if the defendant wishes to make a statement on the defendant's own behalf and to present any evidence in mitigation of punishment. Before imposing sentence the court may allow the victim or victim's family to address the court, if they so request."

In *State v. Heide*, 249 Kan. 723, 730, 822 P.2d 59 (1991), we held that 22-3424(4) is an unambiguous statute that "requires the court to address the defendant personally and ask if the defendant wishes to make a statement and present evidence in mitigation of punishment." *Spencer* found that "[a] general opportunity to comment is not the same as the 22-3424(4) requirement of personally asking if a defendant wishes to make a statement on his or her own behalf and present evidence in mitigation of punishment." 252 Kan. at 189.

The trial court, in the case at bar, inquired: "Mr. Bafford, do you know of any reason legal or otherwise that I should not pronounce a sentence upon you in this case today?" Bafford responded, "No, Sir." Later in the sentencing proceedings the court asked: "Mr. Bafford, is there anything you want to say to me about this matter and the sentence in this case?" Bafford responded:

"Yeah. You know, I'd like to say that one, I'm sorry for the thing that took place on October 24th of 1991. And I do have remorse for it and it bothers me today that I had done what I did. And if I could take back what had happened I, I would.

"If—I don't know what you're going to decide, but if I can't get probation I'd appreciate it if I can be sent to Larned, you know, in lieu of sentencing to try to get some of my drug problems lined out and get the help out there and that I'm sorry to that lady that what I had done that day. I'm sorry to the courts for the behavior the whole time afterwards."

No other questioning occurred. The court failed to explicitly ask Bafford if he wished to present evidence in mitigation of punishment. The trial court did ask counsel for sentencing recommendations, which counsel provided. In *Webb,* we held that the right to allocution is not waived by the defendant's silence or by argument of counsel. 242 Kan. at 529. Webb filed a motion to modify his sentence and did not mention the denial of his right to allocution. We held Webb had waived his statutory right. Bafford, unlike Webb, did not file a motion to modify. He appealed directly from his conviction and sentence. The *Webb* waiver rule does not apply.

Bafford contends that the trial court's inquiry was not sufficient to satisfy the statutory requirements under 22-3424. We agree. The *Spencer* harmless error analysis is not applicable in the case at bar. Spencer was guilty of a class A felony, which carried a mandatory life sentence. Bafford was convicted of a class B felony. The trial court had discretion when imposing the sentence, K.S.A. 21-4501(b) (minimum not less than 5 nor more than 15 years, maximum not less than 20 years nor more than life).

The State acknowledges that 22-3424(4) was not applied as required by *Spencer.* No harmless error contention is advanced in the instant case. *Spencer* and *Heide* control. We remand for resentencing. See *State v. Borders,* 255 Kan. 871, 879 P.2d 620 (1994) for a discussion of harmless error under K.S.A. 1992 Supp. 22-3424(4)(c).

## The Speedy Trial Issue

K.S.A. 22-3402(1) states:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

We recently reaffirmed the obligation of the State to insure that an accused is provided a speedy trial. A variety of decisional rules govern the calculation of time, as well as the determination concerning time apportionment. "[D]elays which are the result

of the application or fault of the accused, or extended by 22-3402(3)(c) to allow the prosecution to obtain material evidence, are not counted in computing the statutory speedy trial period." *State v. Green*, 254 Kan. 669, 672, 867 P.2d 366 (1994). Such delays include those which result from a continuance granted at the request of the defendant. A defendant, by requesting or acquiescing in the grant of a continuance, may waive the statutory right to a speedy trial. Defense counsel's actions are attributable to the defendant in computing speedy trial violations. *State v. Brown*, 249 Kan. 698, 704, 823 P.2d 190, (1991).

Additionally, the time between filing and the decision on a competency hearing motion is chargeable to the defendant when the decision is made within a reasonable time period. The filing of a notice of intent to rely on the insanity defense also operates as a waiver of the requirements of K.S.A. 22-3402 if trial delay was reasonably occasioned by the assertion of the insanity defense. *State v. Ji*, 251 Kan. 3, 28, 832 P.2d 1176 (1992). The time between the filing of a motion for a psychiatric examination and the date on which the psychiatrist's report is received is chargeable against the defendant. *State v. Warren*, 224 Kan. 454, 456-57, 580 P.2d 1336 (1978).

The following dates are relevant to Bafford's speedy trial determination:

| DATE | EVENT |
| --- | --- |
| April 1, 1992 | Arraignment |
| April 1, 1992 | Defense motion for appointment of psychiatric expert to conduct mental evaluation |
| April 14, 1992 | Order for commitment signed |
| May 4, 1992 | Order for commitment filed |
| July 9, 1992 | Letter from Larned State Security Hospital (LSH) advising that Bafford was competent to stand trial |
| September 1, 1992 | Order to transport from LSH to Reno County Detention Center signed |
| September 4, 1992 | Approximate date on which Bafford's counsel filed for continuance |

September 8, 1992     Original trial date
October 6, 1992     Defense filed notice of intent to rely on insanity defense
October 30, 1992     Order appointing mental health expert to evaluate Bafford for insanity defense
January 19, 1993     First day of trial

Bafford contends that over 90 days are chargeable to the State. He observes that he spent a substantial amount of time in LSH. Bafford reasons that even though he was not "in jail," but for the hospital confinement, he would have remained in the Reno County Detention Center because he was unable to make bail. Bafford asserts that a total of 124 days is chargeable to the State (April 1 to May 4—34 days, plus July 9 to October 6—90 days).

Bafford maintains that none of the delay is attributable to him. He asserts that he did not acquiesce in the actions taken by his defense counsel. According to Bafford, his transport from LSH back to Reno County following the July 9 competency determination was delayed by the State. When the State had not returned him to Reno County on September 4, his defense counsel was forced to orally move for a continuance of the September 8 trial date. Bafford acknowledges that LSH recommended he not be returned to Reno County until as close to trial as possible. Bafford believes that his attorney acted out of a necessity created by the State; consequently, counsel's action should not be imputed to Bafford. He claims that, due to his confinement at LSH, he was unable to participate in the decision to move for a continuance.

Bafford observes that we have stated that strategic and tactical decisions are the exclusive province of the lawyer after consultation with the client, citing *Winter v. State*, 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972). He reasons that he has not waived his right to a speedy trial. He recognizes that a defendant's conduct or acquiescence may constitute a waiver, citing *State v. Garner*, 237 Kan. 227, 236, 699 P.2d 468 (1985) (defendant had explicitly waived his right to a speedy trial; the continuance was requested

with his understanding); and *State v. Bean*, 236 Kan. 389, Syl. ¶ 3, 691 P.2d 30 (1984) (defendant's counsel requested a continuance; defendant's waiver of speedy trial right implied). He maintains that waiver does not apply in the case at bar because the continuance was not requested with his understanding.

The State observes that Bafford filed his motion for psychiatric evaluation on April 1 and was found incompetent to stand trial on April 14. Additionally, the State suggests that Bafford was civilly committed to LSH on a mental illness petition on April 14, 1992. Consequently, the State claims that from April 14 to September 24, Bafford was not being held solely in connection with the present case; rather, he was in LSH due to his mental commitment.

The State accents the fact that Bafford's trial counsel requested a continuance on September 4 and filed a notice of insanity defense on October 6. The State emphasizes that neither it nor the trial court ever requested a continuance. It believes that, under the unique facts, 0 days should be credited to the State because all days are attributable to Bafford due to the continuances, competency determinations, insanity defense, and mental illness findings.

Bafford's statutory right to a speedy trial was not violated. On April 1, defense counsel filed a motion for appointment of an expert to conduct a mental evaluation. Although it is not explicitly a motion to determine competency, it is the only motion by defense counsel at that point in time which was related to the competency question. Consequently, April 1 to July 9 is chargeable to Bafford. Even if April 1 to 14 is charged to the State, the total still does not exceed 90 days. Viewing the days in a manner most favorable to Bafford, we calculate the days chargeable to the State as follows:

| | |
|---|---|
| April 1 to 14 | 13 |
| July 9 to September 4 | <u>57</u> |
| TOTAL | 70 |

Bafford misreads *Winter*. Requiring direct consultation with a client concerning every potential motion would mean that stra-

tegic and tactical decisions are no longer in the "exclusive province of the lawyer." *Winter*, 210 Kan. 597, Syl. ¶ 2. Consultation does not mean that counsel must ask the defendant's permission before filing a motion. "Consultation" implies a general discussion between counsel and the client. *Winter* sets forth the limited situations in which the term "full consultation" is to be used:

"In the control and direction of a criminal case certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (1) what plea to enter; (2) whether to waive jury trial; and (3) whether to testify in his own behalf." 210 Kan. 597, Syl. ¶ 1.

The decision of whether a motion for a continuance should be filed does not require a specific consultation between the attorney and client.

In *State v. Ward*, 227 Kan. 663, 608 P.2d 1351 (1980), Ward claimed his speedy trial rights were violated and argued, among other things, that he had objected to continuances requested by one of his attorneys. We applied *Winter* and explained that "[t]he matter of preparation and date of the trial and the type of defense relied upon are clearly strategical and tactical decisions which require trained professional skill and judgment which must rest with the lawyer." 227 Kan. at 667. Counsel was not required to obtain Bafford's permission prior to moving for a continuance.

### Constitutional Right to a Speedy Trial

We recently discussed the *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), balancing test used to determine whether a defendant's constitutional right to a speedy trial was violated. *State v. Vaughn*, 254 Kan. 191, 194, 865 P.2d 207 (1993). We stated with reference to the factor dealing with prejudice to the defendant, "The *Barker* Court indicated three factors which may show prejudice: oppressive pretrial incarceration; anxiety and concern of the accused; and, most important, impairment of the defense. *Barker*, 407 U.S. at 532." *Vaughn*, 254 Kan. at 196. Prosecutors and the courts have the primary burden to assure that defendants are properly brought to trial. *Smith v. Deppish*, 248 Kan. 217, 225, 807 P.2d 144 (1991). "The

length of the delay in bringing an accused to trial is to some extent a triggering mechanism. Until there is some delay that is presumptively prejudicial, there is no need to inquire into the other factors." *State v. Fitch*, 249 Kan. 562, Syl. ¶ 3, 819 P.2d 1225 (1991). In *Fitch*, we reviewed a variety of speedy trial cases and explained that varying lengths of delay have been held to not violate the right to a speedy trial. 249 Kan. at 564.

Bafford asserts that his constitutional right to a speedy trial was violated. He explains that he was arrested on October 24, 1991, and the trial did not begin until January 19, 1993. Bafford suggests that he was not able to assert his right to a speedy trial due to his confinement at LSH and his inability to communicate with his attorney. He believes he was prejudiced by the lengthy delay due to his confinement. Bafford offers no other explanation or reasons as to why his rights were violated under the four-part *Barker* test.

Bafford was charged on October 24, 1991. On November 18, 1991, he filed a motion to determine his competency to stand trial. On February 3, 1992, he was found incompetent to stand trial and was committed to LSH for a period not to exceed 90 days. The order to transport Bafford to LSH was signed March 17, 1992. The competency question was not resolved until July 1992. We agree with the State; the majority of the delay was due to Bafford's mental condition.

Applying the remaining three *Barker* factors, the length of delay was not, on its face, so long as to be presumptively prejudicial. Under *Fitch*, further analysis of the *Barker* factors is not required.

Bafford did not raise the constitutional speedy trial issue in his motion to dismiss for violation of the statutory speedy trial right. His argument that he was prejudiced is not persuasive.

### Sufficiency Of The Evidence
### The Knife As A Dangerous Weapon

Our standard of review on sufficiency of the evidence is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Bradford*, 254 Kan. 133, Syl. ¶ 3, 864 P.2d 680

(1993). Bafford maintains that the evidence presented does not satisfy the standard of review.

Aggravated robbery is "a robbery committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3427. Bafford believes the dangerous weapon element of the crime of aggravated robbery was not proven. He suggests that no rational jury could have concluded beyond a reasonable doubt that the knife he possessed at the time of the robbery was a dangerous weapon.

According to Bafford, the circumstances surrounding the robbery must be examined from the victim's point of view. We agree. He explains that in *State v. Sutherland,* 248 Kan. 96, 100, 804 P.2d 970 (1991), we noted that "the trier of fact must determine whether the victim reasonably believed the object was a deadly weapon." Sutherland robbed a convenience store with an accomplice who had carried a knife. In affirming that the knife was a dangerous weapon, we cited specific testimony by the store clerk which indicated she had assumed Sutherland's accomplice would use the knife. 248 Kan. at 101.

Bafford believes that there is no subjective evidence that Downing was fearful of the knife. He supports his contention by observing: (1) He made Downing aware of the knife merely by raising it in his hands; he did not raise it over the counter; (2) even after Downing was aware of the knife, she backed away from him in an attempt to use the telephone; (3) although he told her not to use the telephone, he did not physically restrain or attempt to restrain her; (4) he never threatened to stab her; (5) his only physical action was to knock over the cigarette stands on the counter, an action that was not threatening; (6) Downing testified that he seemed "pretty calm" when he spoke to her; and (7) before he was out the door of the store, Downing banged on the window for assistance, so she was not afraid that Bafford would turn on her as he left.

Whether a weapon is a dangerous one in the context of an aggravated robbery charge is a fact question for the jury to decide. *State v. Davis,* 227 Kan. 174, 175, 605 P.2d 572 (1980). We have

acknowledged that a knife is a deadly weapon. See *State v. Hanks*, 236 Kan. 524, 537, 694 P.2d 407 (1985) (a knife "described as having a curved blade, 'almost four, four and a half inches' long" was determined to be a deadly weapon); *State v. Henson*, 221 Kan. 635, 639, 562 P.2d 51 (1977) (knife with a six-inch blade was determined "obviously" to be a deadly weapon). When an assailant in the course of a robbery holds a knife with an eight-inch serrated blade, the weapon is inherently intimidating. The legislature did not intend the robbery in the case at bar to be insulated from the aggravated robbery classification because Downing did not state that she was afraid. When certain inherently dangerous weapons are used during an aggravated robbery, the subjective fear and intimidation of the victim may be inferred.

The record in the instant case is unclear as to whether Downing was afraid. No direct testimony was elicited which indicated she was fearful of the knife. Her testimony, however, does feature the knife. She described it vividly. It is reasonable to infer that the knife made an impression on her in preventing her from phoning the police. The jury was specifically instructed that in order to find Bafford guilty of aggravated robbery, the claim that he was armed with a dangerous weapon must have been proven. The evidence was sufficient to support the jury's dangerous weapon determination.

We affirm Bafford's conviction. We reverse on the K.S.A. 1992 Supp. 22-3424(4) issue and remand for resentencing.