No. 70,130

STATE OF KANSAS, *Appellee*, v. SHANE A. DUKE, *Appellant.*

(887 P.2d 110)

Opinion filed December 22, 1994.

*Benjamin C. Wood*, special appellate defender, of Olathe, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, was with him on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Shane A. Duke appeals his convictions for first-degree murder, aggravated robbery, arson, and unlawful possession of a weapon; he also appeals the imposition of the hard 40 sentence. Duke claims (1) his inculpatory statements should have been suppressed; (2) the jury instructions were clearly erroneous; (3) the prosecutor made improper statements in closing argument; (4) the trial judge erred in considering aggravating factors not found by the jury when imposing the hard 40 sentence; (5) he was denied his right to allocution at sentencing; and (6) his trial counsel was ineffective.

Kris Curtis was at his son's babysitter's residence around 4:40 p.m. on January 19, 1993. He heard two or three loud bangs from across the street and noticed smoke from Charles Pettegrew's residence. A red-haired man whom Curtis could not identify knocked at the door of the Pettegrew residence and yelled at Curtis to call 911 because the house was on fire. Curtis called 911. Curtis noticed a car, later identified as belonging to Duke, was parked in the neighborhood.

When the firefighters entered the house they found Pettegrew's body lying on the floor. A fire investigator identified two points of origin for the fire. A flammable liquid had been poured around Pettegrew's body and set afire. A spent shell casing was also found in the living room. The autopsy of Pettegrew's body revealed two bullet wounds—a fatal shot to the chest that severed the aorta and another that entered through the back. Based on the insignificant level of carbon monoxide in Pettegrew's blood, the pathologist determined that Pettegrew had died before the fire was started.

After the fire, Pettegrew's son and grandson noticed the car earlier observed by Curtis parked in the neighborhood. The grandson knew the car belonged to one of Pettegrew's tenants who lived six to eight blocks away. When they returned to the Pettegrew residence the next day, the car was gone. They gave the car's license plate number to the police.

Because the car was registered to Duke, detectives went to Duke's apartment. Duke was not at the apartment. Lara Gran-

man, who lived with Duke in the apartment rented from Pettegrew, was there. She informed the police that Duke was being pressured to pay a debt that he owed Michael Thomas. Prior to his death, Pettegrew had told her that his assets totalled almost a million dollars. Granman told Duke about Pettegrew's assets. Duke replied that he could rob Pettegrew to get the money and, if he had to, he would shoot Pettegrew.

Prior to the shooting, Duke had traded a small handgun to Thomas for drugs. On the day that Pettegrew was killed, Granman and Duke went to Thomas' place and picked up the handgun. They then drove to Pettegrew's residence. Pettegrew was not home, so they returned to their apartment. Later that afternoon, Thomas and Thad Keeling came to Duke's apartment for the money Duke owed Thomas. Duke left to get the money. After a while Granman heard sirens. Five or ten minutes later, Duke returned. Duke gave Thomas money and returned the handgun to him.

Duke had come back to the apartment without his car. Duke later admitted to Granman he had left the car near Pettegrew's house. When the news reported a fire at the Pettegrew's house, Duke told Granman that he had set the fire.

About a week later, Duke told Granman he had entered Pettegrew's residence ostensibly to talk about renting another apartment. When Pettegrew turned his back, Duke shot him. Pettegrew fell to the floor. Duke then shot the wounded Pettegrew in the chest. Duke took $60 from Pettegrew's wallet. Duke explained how after taking the money he had poured gasoline over Pettegrew and set the gasoline on fire. Granman stated that Duke showed no remorse for the killing of Pettegrew.

Duke was later spotted by officers while driving near his residence. After a chase, Duke abandoned the vehicle and escaped. The two other occupants of the vehicle, Thomas and Keeling, were taken into custody and questioned. Thomas told police that Duke had recently given him a weapon. Although Thomas had sold the weapon, he repurchased it and turned it in to the police. A test of the weapon revealed that the bullets found in Pettegrew's body had been fired by that weapon. Duke was later apprehended by police.

At the trial, April Shaffer, the only witness for the defense, testified she met Michael Thomas the day after the murder. Thomas told her that he had talked to Granman to "get their story straight." Thomas stated that he had a sexual relationship with Granman and was getting Duke out of their way. About two weeks later, Thomas told Shaffer that he had given the police the weapon to further support his purposes. Shaffer accused Thomas of shooting Pettegrew and framing Duke. Thomas told Shaffer that she was smarter than she looked and had better watch her step. Shaffer also testified that prior to the trial Lara Granman had told her that Duke had not shot Pettegrew, but Granman did not know if Thomas had shot him.

The jury found Duke guilty of both premeditated and felony first-degree murder, aggravated robbery, aggravated arson, and unlawful possession of a firearm. On motion for a new trial, the aggravated arson conviction was reduced to arson by the trial judge. Additional facts will be discussed in the analysis of the issues raised.

*Suppression of Statement*

At the suppression hearing Officer Tucker testified that after arresting Duke he took Duke to the police station where detectives interviewed him. Officer Tucker had not given Duke the *Miranda* warnings. After the interview concluded, Tucker was escorting the handcuffed and shackled Duke to a detention facility. Another officer asked Tucker what he had. Tucker replied to the other officer, "[A] murder suspect." The other officer said to Tucker, "No shit." Duke replied either, "No shit, it was me" or "I did it."

At the conclusion of the suppression hearing, the district judge determined that the officers had not asked a question of Duke when Duke made his statement to the officer. The judge found that Duke's statement was made freely and voluntarily and not in response to questions asked by the officer and denied the motion to suppress.

Duke's statement was admitted into evidence at trial. Duke did not object to the introduction of the statement. When a motion

to suppress evidence is denied, a defendant must make a timely objection at trial, at the introduction of the evidence, specifying the ground for the objection in order to preserve the issue on appeal. *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 (1993).

Duke asserts on appeal that because the two officers standing next to him were talking about him, they were accusing him of the murder. Duke argues that a reasonable person would respond to the officer's conclusion he had committed a crime. The standard of appellate review is whether there was substantial competent evidence to support the trial court's finding that Duke's statements were made freely, voluntarily, and not in response to any questioning by any officer.

The State argues that *State v. Andrews*, 218 Kan. 156, 542 P.2d 325 (1975), is dispositive of this issue. After being arrested and *Mirandized,* Andrews was taken to the police station for a lineup. Because Andrews asked to speak to his attorney, no lineup was held. Later that day Andrews requested that a lineup be conducted. The detectives told Andrews that a lineup was not necessary because they had photos of Andrews. Andrews replied, "I knew the mailman saw me, that is the reason you took the pictures is to show him." 218 Kan. at 159. The defendant's objection to admission of the statement was overruled. On appeal, Andrews contested the admissibility of the inculpatory statement, claiming the statement was inadmissible because he had requested an attorney prior to making the statement. The *Andrews* court found no evidence that the defendant's blurted-out response was elicited through interrogation, coercion, or trickery by the officers and concluded that Andrews' statement was made in a voluntary and spontaneous manner. 218 Kan. at 159-60.

A similar conclusion was made in *State v. Jones*, 222 Kan. 56, 60, 563 P.2d 1021 (1977), where after the lineup concluded, Jones, who was a suspect in robbery, asked the officers if either he or James Miller (a codefendant) had been identified. An officer replied, "Yes." Jones then stated, "Miller wasn't with me on the robbery." The district court found that the defendant's statement was a voluntary and spontaneous utterance and admitted it into evidence. On appeal, the *Jones* court stated that when a trial court

conducts a full pretrial hearing on the admissibility of an extrajudicial statement by an accused and determines that the statement was freely, voluntarily, and intelligently given and admits the statement into evidence at the trial, this court on appeal should accept that determination if it is supported by substantial competent evidence. After reviewing the evidence, it concluded that there was substantial competent evidence that the statement was voluntary and spontaneous, and not the result of an interrogation. 222 Kan. at 60.

We have reviewed the record. There is substantial competent evidence to support the trial judge's finding that Duke made a free and voluntary spontaneous statement.

*Jury Instructions*

Under the United States and Kansas Constitutions, a person accused of a crime is guaranteed the right to a fair trial. In cases tried to a jury, the judge and jury have separate and distinct functions. It is for the judge to determine and decide questions of law presented during the trial and to state the applicable law in the judge's instructions to the jury. It is for the jury to decide the facts from the evidence submitted and to render a verdict in accordance with the judge's instructions.

Although Duke objected to certain instructions at trial, on appeal he raises different objections to the instructions he challenged. No party may assign as error the giving or failure to give an instruction unless, before the jury retires to consider its verdict, an objection stating the specific grounds is entered. Absent such objection, this court's review is limited to a determination of whether the instruction was clearly erroneous. K.S.A. 22-3414(3). An instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there was a real possibility that the jury would have returned a different verdict. *State v. Patterson*, 243 Kan. 262, 268, 755 P.2d 551 (1988). Because Duke failed to object to the instruction, we apply the clearly erroneous standard.

*The First-Degree Murder Alternative Theories Instruction*

Instruction No. 9, which concerned the alternative theories of first-degree murder charged by the State, stated:

﹢ "In this case, the State has charged Mr. Duke with one offense of murder in the first degree and has introduced evidence on two alternate theories of proving this crime.

"The State may prove murder in the first degree by proving beyond a reasonable doubt that Mr. Duke killed Mr. Charles L. Pettegrew and that such killing was done while in the commission of or attempting to commit aggravated robbery, a felony, or in the alternative by proving beyond a reasonable doubt that Mr. Duke killed Mr. Pettegrew maliciously and with deliberation and premeditation, as fully set out in these instructions.

"Where evidence is presented on the two alternative theories of proving the crime charged, you must consider both in arriving at your verdict.

"In Instruction No. 12, the Court has set out for your consideration the essential claims which must be proved by the State before you may find Mr. Duke guilty of felony murder, that is the killing of a person in the commission of or in the attempt to commit a felony crime.

"In Instruction No. 11, the Court has set out for your consideration the essential claims which must be proved by the state before you may find Mr. Duke guilty of premeditated murder.

"If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you will enter a verdict of guilty for the theory or theories which were proven. *However, in order to find Mr. Duke guilty of premeditated murder all of you must agree that the State has proven that theory beyond a reasonable doubt. While Mr. Duke may be convicted of murder in the first degree under both theories he will only be sentenced for one crime.*

"If you have a reasonable doubt as to the guilt of Mr. Duke as to the crime of murder in the first degree, on either theory, then you must enter a verdict of not guilty." (Emphasis added.)

The instruction follows PIK Crim. 2d 56.02-A (1992 Supp.) with the exception of the emphasized portion. PIK Crim. 2d 56.02-A has been changed. The ending sentence in the second paragraph reading "the defendant killed [the victim] *maliciously* and with *deliberation* and premeditation, as fully set out in these instructions," now reads in PIK Crim. 3d 56.02-A, "the defendant killed [the victim] *intentionally* and with premeditation, as fully set out in these instructions." (Emphasis added to show changes.)

Duke argues that by instructing the jury it could convict him under both theories of murder in the first degree, the judge gave the jury permission to convict under both theories. We disagree with the defendant's conclusion that the instruction gives the jury permission to convict under both theories. The instructions

merely inform the jury that under the law it could convict Duke of first-degree murder under both theories. See *State v. Jackson*, 223 Kan. 554, 557, 575 P.2d 536 (1978).

Duke next argues that the sentence in the instruction, "While Mr. Duke may be convicted of murder in the first degree under both theories he will only be sentenced for one crime" is not qualified within its own structure. He contends that instruction should have stated, "If you find sufficient evidence under both theories then you may convict under both theories." After reviewing the instruction, we find that this claim is without merit. The instruction correctly states the law.

Duke argues that the final sentence of the instruction, "If you have a reasonable doubt as to the guilt of Mr. Duke as to the crime of murder in the first degree, on either theory, then you must enter a verdict of not guilty," took away the jury's option of finding Duke guilty of only felony murder or premeditated murder. Duke asserts that the instruction, by informing the jury that he could only be sentenced for one of the murder convictions, "encouraged" the jury to disregard any distinction between felony and premeditated first-degree murder. Duke concludes that this instruction recommended that the jury impose the hard 40 sentence because Duke is guilty of two homicides.

First, we note that portion of the instruction that states if the jury has a reasonable doubt as to guilt on either theory, it must enter a verdict of not guilty, is an incorrect statement of law. In addition, it contradicts that part of the instruction which informs the jury it could find the defendant guilty of either or both theories of murder in the first degree. PIK Crim. 2d 56.02-A has been changed in PIK Crim. 3d 56.02-A to state, "If you have a reasonable doubt as to the guilt of the defendant as to the crime of murder in the first degree on both theories, then you must enter a verdict of not guilty." Although the part of the instruction based on PIK Crim. 2d 56.02-A misstates the law—that error was a benefit rather than a detriment to the defendant.

We observe that the evidence adduced at Duke's trial supported convictions under both theories of first-degree murder. There is evidence that Duke obtained a weapon and that prior

to killing Pettegrew told Granman that if he had to he would shoot Pettegrew. This is evidence of premeditation to kill. The fact that a death occurred during the robbery supports the felony-murder conviction. Even if the changes to the instruction urged by Duke were utilized, there is no real possibility it would have resulted in a different verdict.

*The Aggravated Arson Instruction*

The complaint/information charged in the aggravated arson count:

"[I]n the County of Sedgwick, and State of Kansas, and on or about the 19th day of January, 1993, A.D., one SHANE A. DUKE did then and there unlawfully, willfully, knowingly, by means of fire or explosive, damage a building or property, to-wit: a residence at 1919 South Euclid, Wichita, Sedgwick County, Kansas, and contents *in which another person has an interest, to-wit: Charles L. Pettegrew [sic] or his heirs, without consent of said person.* . . ." (Emphasis added.)

The pertinent part of the aggravated arson instruction read to the jury is as follows:

"To establish this charge, each of the following claims must be provided:
1. That Mr. Duke intentionally damaged 1919 S. Euclid, a residence of Charles L. Pettegrew, by means of fire;
2. That Mr. Duke did so without the consent of Charles L. Pettegrew or his heirs;
3. That at said time there was a human being in the residence; and
4. That this act occurred on or about the 19th day of January, 1993, in Sedgwick County, Kansas."

Duke notes the statutory elements of arson and aggravated arson, which require proof that the damage by fire or explosion was to a "building or property in which another person has any interest," are included in the complaint but not in the instruction to the jury. K.S.A. 21-3718, K.S.A. 21-3719. Duke argues that because the jury instruction failed to include all essential elements of the offense, his convictions for felony murder and arson must be set aside.

Duke argues that *State v. Linn*, 251 Kan. 797, 802, 840 P.2d 1133 (1992), is dispositive of this issue. Linn was charged with felony murder. The underlying felony for the first-degree murder

charge was aggravated burglary. The instruction to the jury on aggravated burglary, the underlying felony for the felony-murder charge, stated that the defendant entered or remained in the home "with the intent to commit a felony or theft therein." 251 Kan. at 800. The *Linn* court noted that an instruction on aggravated burglary is defective unless it specifies the underlying crime and sets out the specific statutory element of the offense intended by an accused in making the unauthorized entry. The *Linn* court determined that the trial judge's failure to specifically state the underlying felony or felonies prevented the jury from rendering a lawful verdict. It found that the error was of a constitutional magnitude that deprived the defendant of a fair trial. Linn's convictions were reversed, and he was granted a new trial. Here, the instruction specified the crime but omitted an element of the crime charged.

Duke also cites *State v. Johnson*, 12 Kan. App. 2d 239, 738 P.2d 872, *rev. denied* 242 Kan. 905 (1987). In *Johnson*, the defendant had been convicted of attempted aggravated arson. The complaining witness leased rather than owned the damaged building. The Court of Appeals construed the type of interest the victim must have in the property damaged in order for the State to charge the crime of arson. The Court of Appeals noted that, previously, the crime of arson required damage to a building or property that was "owned at least in part by someone other than the defendant." 12 Kan. App. 2d at 240 (citing *State v. Parrish*, 205 Kan. 33, 468 P.2d 150 [1970]). The *Johnson* court observed that in *State v. Powell*, 9 Kan. App. 2d 748, 687 P.2d 1375, *rev. denied* 236 Kan. 877 (1984), it had found the defendant need not know who owned the property if the defendant was aware that the defendant did not own the building. 12 Kan. App. 2d at 241. The *Johnson* court concluded that the phrase "any interest" included leasehold interests and affirmed the conviction. 12 Kan. App. 2d at 243. *Johnson* does not support the defendant's claim.

The State recognized that the trial court has a duty to inform the jury of the essential elements of the crime charged but asserts Duke's failure to object to the instruction given requires this court to find that the omission of the element was clearly erroneous to

reverse the conviction. In *State v. Redford*, 242 Kan. 658, 671-72, 750 P.2d 1013 (1988), the failure to include in the rape instruction that the victim's will was "overcome by force or fear" was not objected to by Redford. Redford's defense consisted of presenting a completely different version of events than that given by the victim. Redford claimed that the victim had consented. The *Redford* court observed there was no evidence of nonconsensual sexual intercourse under any circumstance other than fear. It found that under the facts, the verdict would not have been different and concluded the omission was not clearly erroneous. In *State v. Peltier*, 249 Kan. 415, 426, 819 P.2d 628 (1991), *cert. denied* 120 L. Ed. 2d 875 (1992), the trial judge's failure to instruct on the element of bodily harm needed to prove aggravated kidnapping was harmless because beyond a reasonable doubt that error could not have affected verdict.

The State points out that the evidence Pettegrew had built and resided in the house and that Duke never claimed to have an interest in the building he burned allows a reasonable factfinder to conclude, beyond a reasonable doubt, that Duke was guilty of arson. The State notes that although the jury was not instructed that it had to find that Pettegrew had an interest in the building, it was instructed that it had to find the building was Pettegrew's residence. The State argues that under these circumstances, the omission of that element did not affect the verdict and the failure to instruct in the language of the statute was not clearly erroneous.

Under these circumstances, after reviewing all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found Duke guilty of arson beyond a reasonable doubt. See *State v. Van Winkle*, 254 Kan. 214, Syl. ¶ 5, 864 P.2d 729 (1993). It was obvious that Duke, who rented another residence from Pettegrew, had no interest in the building he burned. The missing element in the instruction would not have altered the outcome of the trial. The omission of that element was not clearly erroneous.

*The Aggravating Factors for the Hard 40 Instruction*

If a defendant is charged with first-degree premeditated murder and the State has served notice that if the defendant is con-

victed of that crime it intends to request that the defendant serve a mandatory term of imprisonment of 40 years, a separate sentencing proceeding is conducted before the jury. K.S.A. 1993 Supp. 21-4624. At the sentencing phase of Duke's trial, the State incorporated all of the information and evidence that it presented during the course of trial to support the aggravating factors submitted to the jury. After talking to his client, defense counsel informed the court that Duke was not going to introduce any evidence.

At the conclusion of the evidentiary portion of the sentencing proceeding, the court is required to provide oral and written instructions to guide the jury during its deliberations. K.S.A. 1993 Supp. 21-4624(4). There are eight aggravating circumstances set out in K.S.A. 1993 Supp. 21-4625. Only evidence of the aggravating circumstances that the State has made known to the defendant prior to the sentencing proceedings is admissible. K.S.A. 1993 Supp. 21-4624(3).

The jury was instructed by the judge that in determining whether the 40-year sentence was to be imposed, it must find beyond a reasonable doubt that one or more of the aggravating factors existed. The three factors were that the murder was committed (1) for a monetary benefit, (2) to avoid or prevent a lawful arrest or prosecution, or (3) in an especially heinous, atrocious, or cruel manner. Although the only mitigating circumstance introduced was Duke's age (Duke was 24 at the time of sentencing), the jury was instructed it was not limited to considering the defendant's age as the only mitigating factor. The jury found the only aggravating factor that existed was that the crime was committed in an especially heinous, atrocious, or cruel manner. The jury concluded that any mitigating factors did not outweigh the aggravating factor and recommended that the judge impose the hard 40 sentence. The court accepted the jury's recommendation and sentenced Duke to a hard 40 sentence for the murder conviction.

During the sentencing phase of the trial, the judge inquired of defense counsel if he had any proposed instructions for the jury. He responded: "No, your Honor. If the instructions are

given, we want them to be PIK as well." The court gave the following PIK Crim. 2d. 56.01-B instruction:

"The State of Kansas contends that the following aggravating circumstances are shown from the evidence:

"1. That Mr. Duke committed the crime for his personal benefit for the purpose of receiving money or any thing of monetary value. And/or

"2. That Mr. Duke committed the crime in order to avoid or prevent a lawful arrest or prosecution. And/or

"3. That Mr. Duke committed the crime in an especially heinous, atrocious or cruel manner. The term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others."

On appeal, Duke challenges the instruction on two grounds: First, the instruction fails to adequately define the terms "especially heinous, atrocious or cruel"; second, the lack of a proper definition of those terms rendered the instruction unconstitutionally vague. Duke did not challenge the court's failure to define the terms or the vagueness of the instruction at the trial level. Duke argues that because the instruction is clearly erroneous, the hard 40 sentence must be vacated and he must be resentenced pursuant to K.S.A. 1993 Supp. 21-4629.

In support of this claim Duke points out that in *State v. Willis*, 254 Kan. 119, Syl. ¶ 4, 865 P.2d 1198 (1993), this court required that the following definition for the "especially heinous, atrocious, or cruel manner" be included in the instruction:

"The defendant committed the crime in an especially heinous, atrocious, or cruel manner. The term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

"*A crime is committed in an especially heinous, atrocious, or cruel manner when the perpetrator inflicts serious mental anguish or serious physical abuse before the victim's death. Mental anguish includes a victim's uncertainty as to [his] or [her] ultimate fate.*"

The added language informs the jury it must find the defendant inflicted serious mental anguish or serious physical abuse *before* the victim's death.

The State argues that *Willis* does not apply because Duke's trial was completed seven months prior to the *Willis* decision, and Duke failed to raise the issue of the vagueness of the instruction in the trial court. In addition, the State asserts that *Willis* is distinguishable because in that case there was no definition of the terms provided in the instructions to the jury, whereas in this case the definitions approved in *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992), were included in the jury instructions.

In *Willis*, the trial judge did not define the terms in the jury instructions. The *Willis* court also noted that neither PIK Crim. 2d 56.01-B (1992 Supp.) nor our decision in *State v. Bailey*, 251 Kan. 156, were available to the judge at the time of the sentencing portion of Willis' trial. *Willis*, 254 Kan. at 127. That is not the situation here. In Duke's case, both the PIK instruction and the *Bailey* decision were available and used by the trial judge in the instruction. If *Willis* does not apply to this case, there is no error. If *Willis* does apply, the instruction given was clearly erroneous.

This court stated in *Willis* that the instruction was to be used in "all cases on appeal as of the date of this opinion [December 10, 1993] in which vagueness of a 21-4625(6) sentencing instruction has been asserted as an issue on appeal." 254 Kan. at 130. This statement has caused some appellants to conclude the *Willis* court intended the general rule that a defendant cannot raise points on appeal which were not presented to the trial court did not apply and intended to allow the issue to be raised for the first time in the appellate courts. That conclusion is wrong. Our statement in *Willis* should be modified as follows: "We adopt the instruction to be used in: (1) Willis' retrial, (2) hard 40 sentencing cases after the date of this opinion, and (3) all cases on appeal as of the date of this opinion in which vagueness of a 21-4625(6) sentencing instruction has been asserted *in the trial court and* as an issue on appeal." 254 Kan. at 130.

Duke did not challenge the judge's failure to define the terms or the vagueness of the instruction at the trial level. A defendant cannot raise points on appeal which were not presented to the trial court. *State v. Burgess*, 245 Kan. 481, 488, 781 P.2d 694 (1989).

*Prosecutor's Comment In Closing Argument*

In criminal trials, the prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial. *State v. Green,* 254 Kan. 669, 685, 867 P.2d 366 (1994).

The prosecutor in the second part of closing argument stated:

"I'm not going to put myself in a position to second-guess you, a collective jury of twelve individuals who have sit—sat through this case and listened intently to the evidence. But one of the things that I kinda wanna point out to you is, there [has] been a lot of smoke in this case. There's been a lot of smoke and it wasn't just at the address of 1919 South Euclid. There was a lot of smoke that was given to you in the argument of the defendant when he closed his case."

Defense counsel objected, claiming the prosecutor's remarks mischaracterized his argument. The court overruled the objection. The prosecutor continued, saying: "It's smoke and mirrors. And when you have that, you get illuminations and things and trying to confuse you."

Duke contends the prosecutor's reference to "smoke and mirrors" is an impermissible comment on defense counsel's closing argument. He asserts the prosecutor implied to the jury that defense counsel was intentionally misleading it. He argues that by overruling his objection to the prosecutor's comment, the judge indicated to the jury that defense counsel had deliberately attempted to confuse and deceive the jury.

For authority that the prosecutor's comment was improper, Duke points to Supreme Court Rule 226, MRPC 3.4(e) (1993 Kan. Ct. R. Annot. 318), which states that an attorney may not "in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused." Duke also quotes

1 ABA Standards for Criminal Justice, The Prosecution Function, Standard 3-5.8 (2d ed. 1980), which asserts that not only does the prosecutor have a duty, but also the trial judge has a responsibility to ensure closing argument is kept within the proper bounds.

The State counters that the prosecutor's comments were in response to the defense counsel's closing argument when Duke's counsel attempted to cast doubt on the veracity of the State's witnesses and the quality of the investigation conducted by the police. It asserts that under the circumstances the prosecutor's comments were within the latitude afforded counsel in closing argument. The State argues that even if the smoke and mirrors comment was impermissible, the prosecutor's comments during closing argument were not so gross or flagrant that they prejudiced the jury and denied Duke his right to a fair trial. See *State v. Baker*, 249 Kan. 431, Syl. ¶ 6, 819 P.2d 1173 (1991). The State concludes that because the evidence of guilt was overwhelming, even if the prosecutor's comment was error, the error did not deprive the defendant of his right to a fair trial and was harmless. *Cf. State v. Johnson*, 231 Kan. 151, 159-60, 643 P.2d 146 (1982).

In *State v. James*, 223 Kan. 107, 111, 574 P.2d 181 (1977), a similar situation occurred when defense counsel stated in closing argument:

"Now, if the State was so disturbed by a psychiatric report being submitted as far as the defendant was concerned, let's just cut through another one of his *smoke screens* that's been presented here. Why didn't they get a psychiatrist to examine the defendant themselves?"

The *James* court found that the comment was within the latitude afforded counsel in closing argument.

In closing argument to the jury, the prosecutor should not use statements calculated to inflame the passions or prejudices of the jury. The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict. *State v. Kelley*, 209 Kan. 699, 704, 498 P.2d 87 (1972). In closing argument, an attorney

may indulge in impassioned bursts of oratory or may use picturesque language as long as he or she introduces no facts not disclosed by the evidence. *State v. Majors,* 182 Kan. 644, 648, 323 P.2d 917 (1958).

In summing up a case before a jury, the prosecutor may not introduce or comment on the facts outside the evidence, but reasonable inferences may be drawn from the evidence and considerable latitude is allowed in discussing it. *State v. Zamora,* 247 Kan. 684, 687-88, 803 P.2d 568 (1990). Counsel may appeal to the jury with all the power and persuasiveness his or her learning, skill, and experience enable counsel to use. *State v. Baker,* 219 Kan. 854, Syl. ¶ 9, 549 P.2d 911 (1976). We have reviewed the record and find that the prosecutor's comments were within the bounds of permissible rhetoric in arguing the State's case.

*Consideration Of Aggravating Factors Not Found By The Jury*

The judge instructed the jury on three aggravating circumstances, one of which it had to find to impose the hard 40 sentence: The jury must find the crime was committed (1) for the defendant's personal benefit for the purpose of receiving money or anything of monetary value, (2) to avoid or prevent a lawful arrest or prosecution, or (3) in an especially heinous, atrocious, or cruel manner. The jury found that the crime was committed in an especially heinous, atrocious, or cruel manner. In assessing the hard 40 sentence on the murder charge, the judge stated:

"I find that the evidence presented not only supports the jury's verdict for the Hard-40 on the grounds that the jury returned that verdict but would also have supported the imposition of the Hard-40 or the mandatory 40 years before parole eligibility on any of the other two grounds that the jury chose not to check off of the list."

Duke argues it was improper for the judge to opine there was evidence to support the aggravating factors argued by the State when the jury failed to find that they existed. Duke notes that under the law a court may override a jury's finding that an aggravating factor does exist, but it cannot use an aggravating factor the jury did not find existed when sentencing the defendant. See K.S.A. 1993 Supp. 21-4624(6). Duke asserts that because the sentencing judge used two aggravating factors not found by the jury

when imposing the hard 40 sentence, the sentence must be set aside.

The State responds that although the jury found only one aggravating factor existed, it also found that the existing factor was not outweighed by existence of any mitigating factor. The State argues the observation by the judge, that in his opinion evidence supported finding the two other aggravating factors existed, did not affect the sentence imposed. It concludes that despite his extraneous comments, the judge considered only the factor found by the jury to exist and properly imposed the hard 40 sentence.

Comments by a judge made at sentencing which are based on the evidence presented do not necessarily prove that the sentence imposed was improper. See *State v. Griffen*, 241 Kan. 68, 73, 734 P.2d 1089 (1987). The jury is required to find only that one of the aggravating circumstances instructed upon existed. The question is whether there exists sufficient evidence to support the jury's finding that the murder was committed in an especially heinous, atrocious, or cruel manner and that this aggravating factor outweighed any mitigating factors. In determining this question, it is clear that the court's comments on the sufficiency of the evidence for the aggravating factors rejected by the jury were superfluous. This issue is without merit.

*The Right To Allocution*

Duke moved for a new trial, alleging insufficient evidence to convict him; improper use of a transcript in the testimony of Lara Granman; error in instructing the jury to consider the charge of aggravated arson (because Pettegrew was dead at the time the arson occurred); the giving of an improper heinous, atrocious, and cruel manner aggravating factor instruction for the hard 40 sentencing; and the judge's refusal to allow the jury to consider the mitigating factor of Duke's mental stress or pressure prior to and subsequent to the commission of the crimes.

K.S.A. 22-3422 requires that when the defendant appears for judgment, the court must inform the defendant of the verdict of the jury and also ask if the defendant has any legal cause why judgment should not be rendered. Duke points out that the court

failed to specifically ask him if there is any legal reason why judgment should not be pronounced. Duke posits, "Perhaps knowledge that one is innocent might be considered a 'legal reason' why sentence should not be pronounced." The State admits the court failed to specifically ask either Duke or his counsel whether they knew of any legal reason judgment should not be pronounced.

The jury in this case reached its verdict on April 16, 1993, the day *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), was filed. This court's decision in *Kingsley* determined that for the crime of aggravated arson, the statutory term of "human being" meant a living person. 252 Kan. 761, Syl. ¶ 2. The trial judge at the hearing on Duke's motion for a new trial reduced the aggravated arson conviction to arson. The State asserts that the fact the court reduced Duke's aggravated arson conviction to simple arson shows "the court actually considered legal reasons why sentence should not be imposed prior to sentencing." The State cites two cases for support of its argument that the judge is not required to ask the defendant if there is a legal reason why sentence should not be imposed, if defendant is aware of the verdict and the court considered the legal reasons sentence should not be imposed claimed by the defendant prior to sentencing.

In *State v. Terry*, 98 Kan. 796, 161 Pac. 905 (1916), the defendant claimed he was not informed of the jury's verdict or asked if there was any legal reason judgment should not be pronounced against him. This court noted Terry's motions for a new trial and for arrest of judgment indicated Terry was aware of the verdict and that he had also attempted to show why judgment should not be entered against him. The journal entry of judgment stated Terry "was duly arraigned for sentence in open court." 98 Kan. at 799. This court found that the journal entry implied that Terry had been "called before the court to answer what reasons he had why judgment should not be entered upon the verdict returned by the jury." The *Terry* court concluded that there was no indication any required steps in rendering a valid judgment were omitted. 98 Kan. at 799.

In *State v. Lund*, 51 Kan. 1, 32 Pac. 657 (1893), a similar conclusion was reached. Lund was charged with a misdemeanor,

which did not require his presence at trial. In an appeal from his conviction, the *Lund* court found that the filing of a motion for a new trial indicated that Lund had been informed of the verdict against him because the motion presented the reasons judgment should not be entered against him. The *Lund* court held there was "no good ground for complaint." 51 Kan. at 5.

In *State v. Green*, 254 Kan. 669, 867 P.2d 366 (1994), Green argued that the judge, at sentencing, had failed to ask whether he had any reason judgment should not be rendered. Green claimed that the only remark addressed to him was when the judge asked if there was "'anything you want to add personally.'" 254 Kan. at 688. On appeal, the *Green* court noted that the transcript of the hearing on the motion for new trial was not part of the record on appeal, but the journal entry of the denial of the motion for a new trial stated that the court, after denying the motion for a new trial, proceeded with allocution, noted the jury's verdict, and then inquired of Green if there was any reason judgment should not be pronounced against him. The *Green* court found that the journal entry denying the motion for a new trial established K.S.A. 22-3422 had been complied with. 254 Kan. at 689.

The journal entry in this case stated that the court had inquired of Duke whether there was any legal cause why judgment should not be pronounced against him. Here, however, unlike in *Green*, the transcript of the hearing on the motion for a new trial indicates the court only inquired of Duke whether there was anything he wished to say on his own behalf, and Duke said no.

Although the record on appeal shows the court did not comply with the letter of K.S.A. 22-3422, Duke was aware of the verdict. Duke filed a motion for a new trial, claiming there were legal reasons why the judgment should be set aside by the judge. Based on Duke's legal argument in his motion for a new trial, Duke's conviction for aggravated arson was reduced to arson by the judge. Duke does not explain how the judge's failure to expressly state the requirements of K.S.A. 22-3422, to determine if there was any legal reason judgment should not be pronounced against him, prejudiced him. The error is harmless.

*Mitigating Evidence*

K.S.A. 1993 Supp. 22-3424(4)(d) requires the court, before it imposes sentence, to address the defendant personally to see if the defendant wishes to either make a statement or present mitigating evidence. Fulfilling the requirements of K.S.A. 22-3422 does not also fulfill the requirement of 22-3424(4)(d). *State v. Heide*, 249 Kan. 723, 730, 822 P.2d 59 (1991). Duke contends the trial judge's failure to ask him if there was any evidence he wished to present requires that he be resentenced.

When considering the sentence to be imposed, the judge asked Duke's counsel if there was anything he wanted to say on behalf of his client. When counsel began to respond, the court interrupted to allow a member of the victim's family to speak. After the relative finished, Duke's counsel concluded his remarks. The judge then asked if Duke wanted to say anything on his own behalf, and Duke replied, "No, sir." The State made its sentence recommendation to the judge. The judge then proceeded to sentence Duke. After imposing the defendant's sentence, the court asked the defense counsel if there was anything else to be taken up. Counsel responded, "No, your Honor." A similar question was posed to the State with the same response. The court then recessed.

K.S.A. 22-3422 and K.S.A. 1993 Supp. 22-3424(4) provide the defendant with statutory rights which are historically known as "allocution." In *State v. Webb*, 242 Kan. 519, 748 P.2d 875 (1988), this court traced the historical background of the right of a criminal defendant to allocution. In *Webb,* the trial court did not address the defendant; all responses to questions by the judge were by counsel. The *Webb* court held that 22-3424(4), the statutory right of a defendant to allocution, is not waived by the defendant's silence or by argument of counsel. The right to allocution is waived if the defendant fails to raise the denial of the right to allocution in a motion to modify sentence. 242 Kan. 519, Syl. ¶ 1.

Several cases involving issues of allocution have been addressed by the appellate courts since *Webb.* In *State v. Heide,* 249 Kan.

723, the defendant pled guilty to a number of serious felonies. At the time of sentencing, the trial court addressed Heide and asked if he had any legal reason why judgment, order, and sentence should not be imposed. Heide responded in the negative. The judge then proceeded to impose sentence. 249 Kan. at 726. Following the imposition of sentence, the judge again addressed Heide and asked if he had any comments. Heide made a lengthy statement to the judge.

On appeal, Heide argued that the trial court violated his statutory right to make a statement on his own behalf and to present evidence in mitigation of punishment *before imposition of sentence*. *Heide* did not file a motion for reconsideration, so the *Webb* waiver rule was not applicable. The *Heide* court agreed that the defendant was entitled to be resentenced, then decided whether the trial court's inquiry of Heide as to whether there was any legal reason why sentence should not be imposed satisfied Heide's 22-3424(4) right to make a statement in his own behalf and to present any evidence in mitigation of punishment. It noted that before imposing sentence, 22-3424(4) unambiguously requires the court to address the defendant personally and ask if the defendant wishes to make a statement and present evidence in mitigation of punishment. K.S.A. 1993 Supp. 22-3424(4) is an additional requirement to K.S.A. 22-3422, the traditional allocution statute. It determined that satisfying K.S.A. 22-3422 does not satisfy the requirements of 22-3424(4). The *Heide* court held that the requirement of 22-3424(4) that the defendant be addressed as to his right to make a statement and to present evidence must be followed before sentence is imposed. Heide's sentence was vacated and the case remanded for resentencing. 249 Kan. at 731.

In *State v. Spencer,* 252 Kan. 186, 843 P.2d 236 (1992), the defendant pled guilty to first-degree murder and was sentenced to life imprisonment. Spencer asked for immediate sentencing. The court had been provided with a previous presentence investigation report and proceeded to comply with the defendant's request. When the trial court asked, "[A]re there any comments that you want to make to the Court [before sentencing]?" the defendant replied, "No." 252 Kan. at 187. The court imposed the

sentence. The defendant appealed, asserting he must be resentenced because he was not given the opportunity to present evidence in mitigation of his punishment. On appeal, the *Spencer* court found that the judge's inquiry of Spencer violated 22-3424(4) by failing to afford the defendant his statutory right to offer evidence in mitigation of punishment. However, the court found the error to be harmless, as the statute required the imposition of a life sentence and the court had considered and rejected probation, the only alternative available. The *Spencer* court held that before sentence can be imposed, 22-3424(4) requires a court to address a defendant personally and ask if the defendant wishes to present any evidence in mitigation of punishment. The *Spencer* court concluded that errors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done. 252 Kan. 186, Syl. ¶¶ 1, 2.

In *State v. Bafford,* 255 Kan. 888, 879 P.2d 613 (1994), the judge "failed to explicitly ask Bafford if he wished to present evidence in mitigation of punishment." 255 Kan. at 891. Bafford did not file a motion to modify his sentence; therefore, the *Webb* waiver rule was not applicable. The State, in *Bafford,* concluded that the statute was not fully complied with and that the rule set forth in Syl. ¶ 1 of *Spencer* was applicable. No attempt was made to assert harmless error by the State, even though *Bafford* in his brief set forth in detail factual circumstances and possible evidence which might have led the court to impose a more lenient sentence. It appears the State agreed or at least impliedly conceded that the error in *Bafford* was not harmless. *Bafford* was remanded to the district court with directions to resentence the defendant.

In *State v. Borders,* 255 Kan. 871, 879 P.2d 620 (1994), pursuant to a plea bargain, the defendant pled guilty to three counts of first-degree felony murder and no contest to three counts of attempted rape in exchange for dismissal of five other felony charges. Sentencing was set for 2:30 p.m. on February 27, 1992. On the morning of the 27th defendant was informed that the sentencing had been rescheduled for 10:30 a.m. that day. At the

hearing Borders asked that the matter be continued until 2:30 p.m. as originally scheduled so that his family could attend. Borders' request for a continuance was denied. Borders was given full opportunity to address the court prior to the sentence being imposed but had declined to do so. Borders appealed, claiming that his due process rights had been violated when the judge advanced the time for his sentencing without sufficient notice to enable his family to appear. Borders asserted that the judge's failure to grant a continuance deprived him of the opportunity to present testimony by his family in mitigation of his sentence.

The *Borders* court noted that while counsel argued that defendant had been denied the opportunity to notify his family of the time of sentencing, there was never any assertion that any family member desired to attend the sentencing or that the defendant had any evidence to present. It observed that even though Borders was present and heard his counsel's argument about lack of opportunity to notify the family, he made no assertion of any evidence or testimony he wanted to present through his family. The *Borders* court cited K.S.A. 60-405, which provides that the verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers.

The *Borders* court noted that while it has long been recognized alleged trial errors will not be grounds for reversal absent a showing of prejudice to the substantial rights of the defendant, we have not specifically addressed the issue of the need to show prejudice when it is claimed that a defendant's rights to allocution have been violated. It believed that the requirement of a showing of prejudice to the substantial rights of the defendant is equally applicable to alleged violations of the allocution statute as it is to the many other areas of criminal procedure where prejudice must be shown to justify a reversal. It found that Borders had shown no prejudice and concluded that while failure to comply with a

mandatory statute, such as 22-3424(4), was error, it was not reversible error unless prejudice to the substantial rights of the defendant is shown. It determined that the defendant was not denied his due process rights and substantial justice had been done.

Failure to follow the statutory mandate of 22-3424(4)(d) may not be reversible error. When a motion for modification of sentence is based upon assertions that the defendant was denied statutory rights to allocution, allegations to that effect must be set forth with particularity in the motion. Absent any such allegations in the pleading or motion, the defendant waives any issue as to the sufficiency of the allocution or compliance with 22-3424(4). Duke failed to proffer what evidence he would have presented if the court met the statutory requirement. Under these circumstances the error is harmless.

*Ineffective Assistance Of Counsel*

Duke's trial counsel filed the notice of appeal on May 5, 1993. On July 16, 1993, Duke filed a separate pro se petition for a writ of habeas corpus/K.S.A. 60-1507 motion, raising issues of ineffective assistance of trial counsel and a Sixth Amendment conflict of interest violation. The State notes that if an ineffective assistance of counsel claim is raised for the first time in an appeal, the appellant's counsel can file a motion for remand so that the district court can rule on the matter. See, *e.g., State v. Van Cleave,* 239 Kan. 117, 716 P.2d 580 (1986). The State points out that Duke's appellate counsel has not filed a motion for remand pursuant to Supreme Court Rule 5.01 (1993 Kan. Ct. R. Annot. 23), and in the absence of such motion, this court cannot remand the matter as requested by Duke's appellate counsel.

We agree. Because Duke filed his pro se motion under K.S.A. 60-1507 while his direct appeal was pending, the trial court properly denied it on jurisdictional grounds. There has been no motion for remand on the issue of ineffective assistance of counsel filed in this case. Remand cannot be granted.

Affirmed.