NOT DESIGNATED FOR PUBLICATION

No. 116,971

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY JAMES LINDSEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed September 28, 2018. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., MCANANY and POWELL, JJ.

POWELL, J.: Jeremy James Lindsey appeals his convictions of numerous sex crimes which included, among other things, three counts of rape and a count of aggravated kidnapping. Lindsey argues that the district court's denial of his attorney's pretrial motion to withdraw as counsel resulted in several errors that require the reversal of his convictions. Lindsey also complains that the district court erroneously denied his second pro se motion for new trial as a premature K.S.A. 60-1507 motion for ineffective assistance of trial counsel. After a thorough review of the record, we find no reversible error by the district court and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Because the issues raised by Lindsey in his appeal deal principally with complaints about his trial counsel, a detailed recitation of the facts is not necessary. Summarized, on September 19, 2014, S.H., an 8-year-old girl, and her family returned to their home in Topeka, Kansas, after attending a church cookout. S.H. fell asleep on the couch in the living room. After everyone went to bed, a man entered the home through the back sliding glass door and picked up S.H. while she was sleeping. The man carried S.H. to a red car and put her in the trunk.

That night, the man sexually assaulted S.H. in three different locations. The first assault occurred when he stopped the car in an alley, took S.H. out of the trunk, blind-folded her, tied her hands with a rope-like charger cord, and raped her. The man then placed her back into the trunk and drove to the woods. The second assault occurred when the man carried her from the trunk into the woods and raped her. He put S.H. back into the car and drove her to a parking lot in front of a house with a fence around it.

After parking the car, the man covered S.H.'s face, held her feet, took her out of the trunk, and put her over the fence. At a later time, a black woman named Nicki arrived in a dark-colored car and drove them to a yellow house. Nicki left, and the man broke the glass on the back door at the house, put S.H. inside, and the two went to the basement. He tied her up with white ropes that resembled a cell phone charger cord and raped her. The man gave S.H. bread and water and made her take a lot of white pills that tasted nasty, caused her stomach to hurt, and made her vomit.

S.H. fell asleep; when she woke up, the man was gone. S.H. was able to untie herself, go out the broken door, and approached a group of adults. S.H. had bruises on her face and body, messy hair, and the shirt was torn. The girl identified herself as S.H. and said that her mother's new boyfriend took off her clothes and dragged her through the

2

woods. S.H. said that he took her to the big yellow house across the street and tied her up, but she was able to wiggle loose. The police were called, and an ambulance transported S.H. to a hospital.

At the hospital, staff collected and gave detectives a sample of S.H.'s vomit that contained a white pill. The staff identified and later tests confirmed the pill as Tramadol, a pain reliever that is not prescribed to children under the age of 18. Sexual Assault Nurse Examiner (SANE) Jennifer Harris conducted a sexual assault examination of S.H. at the hospital that day. Harris concluded that the injuries to S.H.'s genitalia resulted from multiple blunt force trauma consistent with sexual assault, but it did not appear to Harris that there was penetration of the vaginal vault. Harris used swabs to gather evidence from S.H.'s genital area, but testing did not uncover any semen or the presence of male DNA.

S.H.'s mother had reported S.H. missing to the Topeka Police Department on the morning of September 20, 2014, after searching for S.H. at the home. The police initially suspected mother's boyfriend based on what S.H. said about her mother's new boyfriend. The investigation shifted, however, to Lindsey based on S.H.'s description of the suspect and other evidence.

While police were investigating the yellow house on September 21, 2014, Terry Hampton approached a detective and informed him that he was sitting in his car in his girlfriend's driveway when he saw a suspicious man hop the fence and walk away from the yellow house shortly before the police had arrived the day before. He stated that he got a good look at the man's face because he was only about three feet away. The detectives asked Hampton to go to the station, and Hampton identified Lindsey in a six-picture photo array. The State ultimately charged Lindsey with committing three counts of rape with a child under the age of 14 years of age; two counts of aggravated battery; and one count each of aggravated kidnapping, aggravated burglary, aggravated

3

endangering a child, the unlawful administration of a substance, and criminal damage to property. The jury convicted Lindsey of all charges.

Following the denial of Lindsey's posttrial motions, the district court sentenced Lindsey to three consecutive hard-25 life sentences, as well as a guideline sentence of 737 months in prison, plus lifetime postrelease supervision.

Lindsey timely appeals.

I.    DID THE DISTRICT COURT VIOLATE LINDSEY'S SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL BY DENYING HOFFMAN'S MOTION TO WITHDRAW?

Lindsey argues the district court committed several errors by denying his counsel's November 2015 motion to withdraw as counsel. We review a district court's denial of new counsel

> "under an abuse of discretion standard. A court abuses judicial discretion if its action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. If the district court has a reasonable basis to conclude that counsel could provide 'effective aid in the fair presentation of a defense,' then it cannot be found to be an abuse of discretion. The defendant bears the burden of proving the district court abused its discretion in denying the motion for new counsel. [Citations omitted.]" *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016).

The Sixth Amendment of the United States Constitution guarantees a defendant the right to effective assistance of counsel during all critical stages of his or her criminal proceedings. *State v. McDaniel*, 306 Kan. 595, 606, 395 P.3d 429 (2017). As applied to a defendant with appointed counsel, the Sixth Amendment does not guarantee the defendant the right to select which court-appointed attorney will represent him or her during the proceedings. *Staten*, 304 Kan. at 970; *State v. Pfannenstiel*, 302 Kan. 747, 759,

4

357 P.3d 877 (2015). A defendant must show justifiable dissatisfaction with current counsel "by showing a conflict of interest, an irreconcilable disagreement, or a complete breakdown in communication between counsel and the defendant." *Staten*, 304 Kan. at 970.

> "It is the task of the district court judge to insure that a defendant's right to counsel under the Sixth Amendment to the United States Constitution is honored. Irreconcilable conflict between a defendant and his or her attorney may, in certain circumstances, require the appointment of substitute counsel to protect the defendant's Sixth Amendment right to effective assistance of counsel. [Citations omitted.]" *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007).

When a district court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further. *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307 (2006). When conducting this inquiry,

> "[a] court is not required to engage in a detailed examination of every nuance of a defendant's claim of inadequacy of defense and conflict of interest. A single, open-ended question by the trial court may suffice if it provides the defendant with the opportunity to explain a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel." *Staten*, 304 Kan. at 972-73.

"Ultimately, a district court is justified in denying a request for new counsel if there is a reasonable basis for believing the attorney-client relationship has not deteriorated to a point that appointed counsel could not give effective aid in the presentation of the client's defense." *State v. Garza*, 290 Kan. 1021, 1025, 236 P.3d 501 (2010).

It is of particular note that Lindsey went through three appointed counsel before his fourth appointed counsel filed his motion to withdraw. To provide the proper context

5

of the district court's decision on the motion, we detail some of the history of Lindsey's representation.

*Additional Relevant Facts*

On October 1, 2014, David McDonald entered his appearance as Lindsey's appointed counsel. At the preliminary hearing on December 1, 2014, McDonald told the district court that Lindsey had informed him that he wanted new counsel. The district court held an in camera examination with only Lindsey and McDonald present, apparently to protect Lindsey's attorney-client privilege. Lindsey informed the district court that his counsel did not communicate with him and prevented him from going through discovery. McDonald replied that he visited Lindsey in jail three times and had sent a law clerk to review discovery with Lindsey for two hours. Lindsey stated the law clerk was there for only 15 minutes. After ending the in camera examination, the district court denied Lindsey's motion for replacement counsel.

Less than a month later, McDonald filed a motion to withdraw as counsel, arguing that his failure to withdraw risked ineffectiveness of counsel based on a lack of trust and communication and a complete breakdown in the attorney-client relationship. After a hearing, the district court granted the motion to withdraw and appointed Jonathan Phelps as Lindsey's counsel. A transcript of the hearing on the motion to withdraw was not included in the record on appeal.

In March 2015, Phelps filed a motion to withdraw, asserting Lindsey intended to represent himself. At a hearing, the district court informed Lindsey of his right of self-representation and gave Lindsey time to confer with his counsel. Afterward, Lindsey stated he intended to have his counsel represent him, and the motion was withdrawn. In May 2015, Phelps filed a second motion to withdraw as counsel, asserting that the attorney-client relationship was deteriorated, it was impossible for him to provide

effective assistance of counsel, and Lindsey had demanded his withdrawal. Lindsey also filed a pro se motion to dismiss his counsel. As it had done for Lindsey's first counsel's withdrawal motion, the district court conducted an in camera examination with only Lindsey and Phelps present. Phelps stated there was a lack of communication and that Lindsey thought he was ineffective because Lindsey insisted he had the right to decide every issue in his case. Lindsey initially declined to offer any argument on the record. From its prior interactions with Lindsey, the district court observed that Lindsey had some trouble listening and getting angry and voiced its concern that no attorney would be able to represent Lindsey. Lindsey said he had trouble with Phelps' preparedness and that there was a complete breakdown in communication. Phelps disagreed with Lindsey's factual statements but argued that his statements showed why the district court should sever the relationship. The district court granted both the motion to withdraw and motion for substitute counsel, finding an irreconcilable breakdown in communication between Lindsey and Phelps.

In June 2015, Gary Conwell was appointed as Lindsey's third counsel. The case was scheduled for a jury trial on August 31, 2015, but in early August 2015, Lindsey filed a pro se motion to dismiss Conwell as his counsel, claiming Conwell had violated the Kansas Rules of Professional Conduct (KRPC) (2015 Kan. Ct. R. Annot. 433) for scope of representation, diligence, and communication, and that there was an attorney-client breakdown. Subsequent to this motion, Conwell filed several motions to suppress. At a later hearing, Lindsey withdrew his motion to dismiss his counsel, stating that the differences had been resolved.

At a motion hearing on August 24, 2015, the district court ruled on several motions. During the hearing, Lindsey informed the district court that he wished to represent himself. After conducting a colloquy with Lindsey, the district court granted his motion for self-representation and appointed Conwell his stand-by counsel. After

7

representing himself for part of the hearing, Lindsey moved to have counsel represent him; the district court granted Lindsey's motion and reappointed Conwell.

On August 29, 2015, Conwell filed a motion to withdraw as counsel, claiming Lindsay had discharged Conwell that same day, there had been a complete breakdown in communication, and because of Lindsey's actions and requests during the pretrial conference on August 24, 2015. On August 31, 2015, at the hearing on Conwell's motion to withdraw, the district court cleared the room and conducted an in camera examination with only Conwell and Lindsey present. In relevant part, Conwell and Lindsey both stated that the two had many disagreements regarding whether to file and argue pretrial motions and that Conwell had refused to subpoena a witnesses who could provide exculpatory evidence. Lindsey stated that he wanted to be represented by counsel. The district court informed Lindsey that if new substitute counsel were appointed, the trial would be delayed and any delay would be assessed against Lindsey for speedy trial purposes. Lindsey agreed, and the district court granted Lindsey's motion on grounds of justifiable dissatisfaction while noting that Lindsey had had two previous counsel and had filed other motions for substitute counsel in the case.

In September 2015, Donald Hoffman was appointed as counsel, and the jury trial was rescheduled for January 19, 2016.

On November 12, 2015, Hoffman, like Lindsey's prior counsel, filed a motion to withdraw. Hoffman asserted a deterioration in the attorney-client relationship, the fact that Lindsey had requested Hoffman to withdraw, and cited to KRPC 1.16(a) and (b) as grounds for his withdrawal. That same day, Lindsey filed a pro se notice of speedy trial, disagreeing with the January 2016 scheduled trial date.

As the district court had done during hearings on previous motions to withdraw, it cleared the courtroom and held an in camera examination with only Lindsey and

8

Hoffman present. Hoffman stated the relationship had deteriorated, in part from Lindsey's refusal to waive his speedy trial rights and from Lindsey's demands that Hoffman take certain actions—such as relitigating prior district court rulings and obtaining an expert witness—that required more time than his speedy trial clock permitted. Hoffman stated that he felt he could not continue as his attorney because Lindsey had disclosed that he had an alibi but refused to give Hoffman the alibi witness' information. Hoffman informed Lindsey that to pursue an alibi defense he had to make a disclosure to the State. Lindsey's refusal to disclose resulted in Lindsey firing Hoffman and Hoffman filing his motion to withdraw. Hoffman stated the disagreement made him question his ability to be an effective counsel and had created such a hostile and argumentative relationship that he did not believe he could continue as Lindsey's counsel. Lindsey declined to state anything regarding Hoffman's motion to withdraw.

In considering Hoffman's motion, the district court noted that it was not the first time Lindsey had been in this situation and that he had established a pattern of having an angry demeanor and a consistent refusal to communicate with his attorney. The district court found Lindsey's refusal to inform Hoffman of his alibi witness' information was unreasonable and explained to Lindsey that the standard for ruling on Hoffman's motion to withdraw and appoint substitute counsel was whether Lindsey had justifiable dissatisfaction with his current counsel. After inviting the State back into the courtroom, the district judge stated:

> "Based on what I have heard and reviewed *in camera*, the Court finds that there certainly has not been something established to which the Court can find issue with what Mr. Hoffman has done. And based on what I've heard, I do not find that the defendant has established justifiable dissatisfaction with his current counsel, Mr. Hoffman. I find that Mr. Hoffman can continue to give effective aid in the presentation of the client's defense. It is not a requirement that the defendant like his attorney. It . . . is not a requirement that the attorney like the defendant. It appears to me, certain, that the defendant would be well advised to communicate with his Counsel. Would be well advised to attempt to work

9

with him as best he can. But there has not been an indication, or basis, for this Court to believe that the motion filed by Mr. Hoffman should be granted. It is denied.

"And Mr. Hoffman, I know that you're a professional and you will continue to act professionally. And although you asked to withdraw, that motion has been denied. And I know you will continue to try to work with Mr. Lindsey as your client.

"Mr. Lindsey, I hope you will try to work with Mr. Hoffman as your attorney."

A.    *Did the district court commit a legal or factual error?*

Lindsey first argues that the district court legally and factually erred in denying Hoffman's November 2015 motion to withdraw as counsel by applying the incorrect legal standard and placing the burden on him to prove justifiable dissatisfaction to warrant the appointment of new counsel.

However, contrary to Lindsey's assertion, the burden is on a defendant to present an articulated statement of justifiable dissatisfaction in order to trigger the district court's duty to inquire further. *Staten*, 304 Kan. at 970. While the law imposes a threshold burden of establishing justifiable dissatisfaction on defendants, that burden only triggers a district court's duty to conduct an adequate inquiry into the alleged conflicts. See *Pfannenstiel*, 302 Kan. at 763-64.

Here, the district court gave Hoffman and Lindsey the opportunity to explain the allegedly deteriorated attorney-client relationship before denying the motion; thus, the district court conducted an adequate inquiry. Accordingly, the district court did not abuse its discretion in failing to conduct *any* inquiry into the alleged conflict and did not deny the motion solely on the defendant's failure to give an articulated statement of justifiable dissatisfaction. See *Staten*, 304 Kan. at 971.

10

Lindsey also argues the district court factually erred by placing the burden on him because his silence during the in camera examination shows that he did not request or argue in support of Hoffman's removal. But the record fails to support Lindsey's argument. Hoffman's motion read: "[T]he defendant requested that counsel withdraw from further representation." During the in camera examination, Hoffman stated Lindsey fired him before he filed the motion to withdraw as his counsel. Also, Hoffman stated that the attorney-client relationship was deteriorating, in part, because of Lindsey's refusal to waive his speedy trial rights. The fact that Lindsey declined to state anything at the in camera examination gives rise to the reasonable inference that Lindsey supported Hoffman's request, not that he was somehow opposed to Hoffman's withdrawal or removal as counsel.

B.      *Was the district court's denial of Hoffman's motion to withdraw arbitrary, fanciful, and unreasonable?*

Second, Lindsey argues that the district court's denial of Hoffman's motion to withdraw as counsel was arbitrary, fanciful, and unreasonable. Lindsey asserts the district court erred in ignoring Hoffman's statements at the in camera examination that he could not reconcile or resurrect an effective attorney-client relationship with Lindsey. In other words, the court did not make a reasonable decision in light of the facts that came forward at the hearing. See *Staten*, 304 Kan. at 971.

"Irreconcilable conflict between a defendant and his or her attorney may, in certain circumstances, require the appointment of substitute counsel to protect the defendant's Sixth Amendment right to effective assistance of counsel." *Carter*, 284 Kan. at 321. "[D]isagreements or a lack of communication between a defendant and counsel will not always rise to the level of justifiable dissatisfaction." *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). A district court does not abuse its discretion in denying a motion for new counsel "where the irreconcilable conflict resulted from the defendant's refusal to

11

cooperate or communicate with trial counsel." *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 3, 864 P.2d 693 (1993).

Here, the district court found—and the record supports—that Lindsey's refusal to provide Hoffman with an alibi witness' information was unreasonable, and Lindsey does not challenge this finding as error on appeal. See *State v. Gonzalez*, 307 Kan. 575, Syl. ¶ 7, 412 P.3d 968 (2018) (issues not raised on appeal are waived).

Lindsey also argues that we should not consider whether he would have had the same type of problems with a different attorney because the district court did not make that finding. But the record establishes that Hoffman was Lindsey's fourth appointed counsel, and Lindsey had had communication difficulties with each of his prior appointed counsel. The district court noted that Lindsey had established a pattern of being angry and refusing to communicate with his attorney, and expressly advised Lindsey to make an effort to communicate with Hoffman. Therefore, the record supports an implied finding that Lindsey likely would have had the same communication problems with any attorney based on his established pattern.

Overall, despite Hoffman's expressed view that he felt that he could not continue the attorney-client relationship, the district court's ruling had a reasonable basis to conclude that if Lindsey started to communicate with Hoffman, then Hoffman could provide him with effective assistance of counsel. See *Brown*, 305 Kan. at 425. We find no abuse of discretion on the part of the district court by denying Hoffman's motion to withdraw.

C.  *Did Hoffman provide representation free from conflicts of interest?*

Lindsey argues that the district court's failure to grant Hoffman's motion to withdraw prejudiced him at trial because it led to a loud argument that occurred in front of the jury, necessitating a new trial because Hoffman was duty bound to seek a mistrial.

For context, while the State was questioning Karen Lowe, the FBI forensic examiner on trace evidence, the following occurred:

"Q.     [THE STATE]:  Ms. Lowe, I'm handing you back State's Exhibit 182.
        Ms. Lowe, I want—
        (Loud off-the-record discussion was had between Mr. Hoffman and the defendant.)
                "THE COURT: Just a minute. Counsel, I can hear you.
        "THE DEFENDANT: We need a break, Your Honor.
                "THE COURT: All right. We'll take a break for 15 minutes, ladies and gentlemen.
        . . . .
        "THE COURT: All right. We are on the record, outside of the presence of the jury.
        "Mr. Lindsey is here, all counsel are here.
        "I understand that you wanted to see me, Mr. Lindsey?
        "THE DEFENDANT: Attorney/client conflict. I'd ask that the District Attorney be excused.
        . . . .
        "THE COURT: All right. I'll ask that the prosecutors please step out.
        . . . .
        "THE COURT: Okay. How can I help you?
        "THE DEFENDANT: Well, I feel like there's attorney/client-deteriorating relationship based on the fact of—I asked my counsel for a certain amount of questions to ask this witness, in particular to my defense, which is a major defense to me, as excluding exculpatory evidence, as excluding the possibility that this child's DNA was on my

13

clothing, and it says that in the report. And I wanted the jury to hear that. I asked him, could he please not exclude this witness because there was questions I wanted to be addressed before the jury.

"I think Mr. Hoffman made some statements towards me that I didn't appreciate, which turned the heads of the jury. So I don't know—I don't know if—I don't know if this could cause prejudice to me or not, if me and my attorney is arguing in front of the jury. I don't think that's been beneficial to me at all.

"And when I want to talk to him outside the presence of the jury, I can't talk to him. I have discussed this with this man before about my defense as to this DNA.

"The Court is aware of Gary Conwell with the same issue about this DNA being—the FBI being down here. I wanted them down here for a particular reason because it's part of my defense. I'm facing three off-grid sentences plus 50 years. I feel like if my attorney don't—tell me he don't care what I feel about my case, then there's no attorney/client relationship."

The district court then advised Lindsey that Hoffman had to listen and think about how a witness' testimony affected the entire case and that it was Hoffman's responsibility to decide what questions to ask and not ask. Lindsey acknowledged that the district court would not continue the trial but asked the district court to note for the record that there was a breakdown in the attorney-client relationship. Hoffman then disclosed that the argument stemmed from Lindsey wanting to recall the FBI forensic examiner to ask two questions on DNA evidence that Hoffman felt were unnecessary because the report admitted into evidence showed an absence of DNA and, in Hoffman's opinion, the additional questions could lessen the effect of the lack of DNA. Eventually, however, Hoffman requested and the district court agreed to recall the FBI forensic examiner to allow Hoffman to ask the additional questions, which he did.

For Lindsey's argument to prevail on appeal, we are required to make three findings in order to conclude that Lindsey suffered real harm and prejudice from the district court's prior denial of Hoffman's motion to withdraw as counsel: (1) The district court erred in denying Hoffman's prior motion to withdraw as counsel; (2) the denial of

14

Hoffman's motion caused or related to the loud argument that occurred later at trial; and (3) a conflict of interest arose between Hoffman and Lindsey on whether to request a mistrial.

First, as discussed above, Lindsey's argument fails out of the starting gate because we have already held that the district court did not err by inquiring into and denying Hoffman's motion to withdraw as counsel. Second, even if we assume the district court erred by denying Hoffman's motion to withdraw, the attorney-client disputes cited in Hoffman's motion to withdraw before trial differ from the argument at trial, causing us to question a connection between the denial of Hoffman's motion to withdraw and the loud argument during the trial. Hoffman's motion to withdraw was based on Lindsey's request for more pretrial motions, a refusal to waive his speedy trial rights, and whether to assert an alibi defense; the disagreement at trial stemmed from what questions to ask a witness on cross-examination. Lindsey fails to provide any authority that a denial of a pretrial motion to withdraw as counsel—where the district court inquired into the conflict—could cause a defendant prejudice at trial when the conflicts serving the basis for the withdrawal motion before trial differed from the conflict during trial. *Gonzalez*, 307 Kan. 575, Syl. ¶ 7 ("When a party fails to brief an issue, that issue is deemed waived or abandoned.").

Lindsey also claims the argument in front of the jury required Hoffman to request a mistrial and amounts to an actual conflict of interest that affected Hoffman's effectiveness as counsel. Lindsey argues that the essence of the conflict was Hoffman cursing at him in front of the jury and then failing to seek a mistrial.

The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. *State v. McCullough*, 293 Kan. 970, 997-98, 270 P.3d 1142 (2012). However, Lindsey's argument on appeal is not supported by the record. There is no indication in the record that a conflict of interest arose between Lindsey and

15

Hoffman on whether to request a mistrial. While discussing the matter in camera, Lindsey stated that Hoffman made statements to him that he did not appreciate and that turned the heads of the jury. The record also does not contain any finding by the district court regarding what Hoffman said and what the jury heard. More importantly, the record fails to support Lindsey's assertions that Hoffman cursed at him during the trial and that the district court heard this. Rather, the record establishes that the disagreement between Lindsey and Hoffman largely centered on what questions to ask a witness for the State.

"While a criminal defendant has the right to consult with appointed counsel and to discuss the general direction of his or her defense, the strategic and tactical decisions are matters for the professional judgment of counsel. *State v. Bafford*, 255 Kan. 888, 895, 879 P.2d 613 (1994)." *State v. McCormick*, 37 Kan. App. 2d 828, 838, 159 P.3d 194, *rev. denied* 284 Kan. 949 (2007). Lindsey admits on appeal that the attorney-client conflict involved a matter of Hoffman's trial strategy and was resolved through Hoffman's recall of Brown as a witness. Therefore, the conflict between Hoffman and Lindsey involved trial strategy within Hoffman's purview and was not irreconcilable or a conflict of interest that required the appointment of substitute counsel or the declaration of a mistrial.

Lindsey also claims the district court's in camera examinations were improper and required Hoffman to disclose privileged information regarding his alibi defense which created a conflict of interest. The district court conducted an in camera examination outside the State's presence due to the potential disclosure of attorney-client privileged information.

In *Pfannenstiel*, the defendant argued that the district court erred in failing to appoint substitute counsel to argue his pro se motion for discharge of counsel during the district court's inquiry because his filing of the pro se motion created a conflict of interest with his current counsel. The Kansas Supreme Court disagreed, holding that precedent required a district court to appoint substitute counsel only after the district court's inquiry

16

into a potential conflict of interest and after finding that the defendant had established justifiable dissatisfaction with current counsel. 302 Kan. at 765-66. Generally, a district court's inquiry into attorney dissatisfaction typically occurs in the State's presence, but some disclosures may require a district court to conduct the inquiry in chambers. See 302 Kan. at 765 (citing *United States v. Foster*, 469 F.2d 1, 5 [1st Cir. 1972]). Our Supreme Court reasoned that

> "the inquiry into whether a defendant has demonstrated justifiable dissatisfaction with his attorney requires both the court and defense counsel to walk a delicate line in making the inquiry. The Supreme Court has observed that judges must explore the basis of the alleged conflict of interest *'without improperly requiring disclosure of the confidential communications of the client.' Holloway*, 435 U.S. 487. Moreover, other courts draw a meaningful distinction between (1) an attorney truthfully recounting facts and (2) an attorney going beyond factual statements and advocating against the client's position." (Emphasis added.) 302 Kan. at 766.

We conclude the district court acted within its discretion in conducting the in camera examination with only Hoffman and Lindsey. The district court neither compelled nor required Hoffman to disclose any privileged information regarding the attorney-client relationship with Lindsey during the in camera examination into Hoffman's motion to withdraw as counsel. Rather, the district court asked if Hoffman wanted to add anything to his motion to withdraw as counsel during the in camera examination, and Hoffman stated his reasons for believing that the attorney-client relationship was deteriorated. Contrary to Lindsey's arguments on appeal, the district court's question did not *require* or compel Hoffman's disclosures. Therefore, Lindsey's assertion that the district court improperly required Hoffman's disclosures is without merit.

Lindsey also argues that Hoffman's statements during the in camera examination improperly advocated against Lindsey's position and were harmful to him. In *Pfannenstiel,* the defendant filed a pro se motion to discharge his current attorney. Our

17

Supreme Court ultimately held, however, that the district court did not abuse its discretion in conducting an appropriate inquiry into his dissatisfaction because his counsel did not argue against his pro se motion or result in a conflict of interest:

> "Pfannenstiel's counsel also approached the line of advocating against Pfannenstiel's position by saying, 'Mr. Pfannenstiel has misunderstood some things I've told him.' But counsel immediately followed that statement by arguing that the district court should grant Pfannenstiel's motion. Taken in context, the comment about the misunderstandings actually supported Pfannenstiel's view that there had been a breakdown in communication between him and his attorney." 302 Kan. at 767.

As applied to this case, Lindsey did not file a pro se motion for substitute counsel, but Hoffman's motion stated that Lindsey requested Hoffman to withdraw as counsel, and Hoffman's statements to the district court regarding the dispute of the alibi defense supported Lindsey's request. Hoffman expressly stated that due to Lindsey's refusal to disclose any alibi witness' information, he was not sure if he could resurrect an attorney-client relationship with Lindsey and the dispute made him question whether he could provide effective assistance of counsel. Hoffman's statements support his motion to withdraw as counsel due to a breakdown in communication and conflicts. Moreover, the disclosure occurred outside the State's presence and would not likely cause harm to Lindsey during any subsequent hearing. Thus, Hoffman did not argue against Lindsey's request that he withdraw as Lindsey's counsel and his statements were not harmful to Lindsey.

As a final note, Hoffman, subsequently moved to continue the scheduled January 19, 2016 jury trial to investigate Lindsey's alibi defense. Accordingly, the disclosure of Lindsey's alibi defense was ultimately made known to the State and to the district court in open court. Moreover, Hoffman's statements that he needed Lindsey to disclose the alibi defense witness' information during the in camera examination follows the statutory requirements under K.S.A. 22-3218.

Therefore, no conflict of interest resulted from Hoffman's disclosures at the in camera examination. The district court did not err in denying Hoffman's motion to withdraw, and Lindsey's Sixth Amendment rights were not violated.

II.     DID THE DISTRICT COURT ERR IN DENYING LINDSEY'S SECOND AMENDED MOTION FOR A NEW TRIAL?

Lindsey argues that the district court erred in considering his second amended motion for new trial as a premature K.S.A. 60-1507 motion and denying the motion without considering the merits of his ineffective assistance of counsel claims.

*Additional Relevant Facts*

The jury entered the verdicts against Lindsey on January 29, 2016. On March 31, 2016, the district court held a hearing and denied Hoffman's motion for new trial and Lindsey's first pro se motion for new trial.

On April 5, 2016, Lindsey filed a pro se motion titled Judicial Notice, in which he waived his right to be present at sentencing and moved the district court to dismiss Hoffman as his counsel. On April 11, 2016, Hoffman filed a motion to withdraw as counsel and Lindsey also filed a pro se motion titled Second Amended Motion for New Trial, which argued, in part, Hoffman was ineffective as his trial counsel. Lindsey later filed a supplemental memorandum in support of his second motion.

At the hearing on April 14, 2016, the district court held an in camera examination on Hoffman's motion to withdraw as counsel with only Lindsey and Hoffman present. After hearing argument from Lindsey and Hoffman, the district court at first denied the motion to withdraw as counsel. In ruling on Lindsey's second amended motion for new trial, the district court first construed and denied Lindsey's claims raised in prior motions

19

for new trial as a motion to reconsider. The district court also denied the additional claims as out of time and as a premature K.S.A. 60-1507 motion. After hearing additional argument, the district court ultimately granted Hoffman's motion to withdraw as Lindsey's counsel.

Neither party challenges the district court's denial of Lindsey's claims that were construed as a motion to reconsider. Instead, the parties contest whether the district court could properly deny an untimely motion for new trial asserting ineffective assistance of counsel claims as a premature K.S.A. 60-1507 motion.

The interpretation of a statute is a question of law over which an appellate court has unlimited review. See *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). "'The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained.'" *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). When a statute is plain and unambiguous, we do not speculate about the legislative intent behind the clear language and we refrain from reading something into the statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

Under K.S.A. 2017 Supp. 22-3501(1), a criminal defendant has 14 days after the verdict to move for a new trial if the motion is not based on newly discovered evidence. Lindsey filed his second amended motion for new trial over 14 days after the verdict; therefore, his second amended motion for new trial was untimely.

However, "[a]n untimely motion for new trial that asserts ineffective assistance of counsel *may* be treated as a collateral attack on a judgment under K.S.A. 60-1507." (Emphasis added.) *State v. Jarmon*, 308 Kan. 241, Syl. ¶ 5, 419 P.3d 591 (2018). But K.S.A. 2017 Supp. 60-1507(a) does not permit relief when the movant is not "in custody under sentence of a court of general jurisdiction." Lindsey filed his motion prior to being

20

sentenced; therefore, he was not in custody under a sentence. See *Baker v. State*, 297 Kan. 486, 491, 303 P.3d 675 (2013) (motion filed under K.S.A. 60-1507 premature when prior to sentencing). Thus, according to the plain language of K.S.A. 2017 Supp. 60-1507(a), the district court was correct that Lindsey's ineffective assistance of counsel claims, when construed as a collateral attack under K.S.A. 60-1507, were premature. See *State v. Dunerway*, No. 111,457, 2015 WL 5224703, at \*11 (Kan. App. 2015) (unpublished opinion), *review denied* 305 Kan. 1254 (2016).

We disagree with our concurring colleague's assertion that *State v. Reed*, 302 Kan. 227, 352 P.3d 530 (2015), compelled the district court to consider the merits of Lindsey's ineffective assistance of counsel claims. Instead, our explication of *Reed* is that a district court *may* treat an untimely motion for a new trial containing ineffective assistance of counsel claims as a collateral attack under K.S.A. 60-1507 and retain the jurisdiction to do so, not that it *must* do so. See 302 Kan. at 233-36.

Unlike in the present case, the district court in *Reed* chose to consider the merits of the defendant's ineffective assistance of counsel claims despite the State's assertions that the court lacked the jurisdiction to do so. Our Supreme Court reasoned that ineffective assistance of counsel claims were "unique" and that district courts were well equipped to deal with such claims immediately because the evidence concerning such claims would be the "most accessible and fresh." 302 Kan. at 233, 236. The court also stated that "[b]ecause [the defendant] had yet to be sentenced, strictly speaking, K.S.A. 60-1507 was inapplicable." 302 Kan. at 233. Moreover, the court observed that the district court, which construed the defendant's untimely new trial motion as one under K.S.A. 60-1507 and elected to hold an evidentiary hearing on the defendant's ineffective assistance claims, "may have jumped the procedural gun" when doing so prior to the defendant's sentencing. 302 Kan. at 235. We interpret these caveats to mean that our Supreme Court, in the interest of judicial economy, was unwilling to dismiss on jurisdictional grounds a defendant's ineffective assistance of counsel claims once the district court held an

21

evidentiary hearing and considered the merits of such claims. Accordingly, the district court here did not err in refusing to consider the merits of Lindsey's claims as a premature K.S.A. 60-1507 motion.

Affirmed.

* * *

MALONE, J., concurring: I concur in the result reached by the majority that Jeremy James Lindsey's convictions should be affirmed. Lindsey's first claim that the district court violated his constitutional right to effective counsel by denying Donald Hoffman's pretrial motion to withdraw based on a conflict of interest presents a close question, but I agree with the majority that the district court committed no reversible error under the facts and circumstances of this case. The majority also concludes that the district court did not err in summarily denying Lindsey's second amended motion for a new trial without addressing the merits of his ineffective assistance of counsel claims. I find that the district court erred in the manner that it rejected Lindsey's motion. But for the reasons stated herein, I find that the record conclusively shows that Lindsey is not entitled to relief on his ineffective assistance of counsel claims.

As the majority opinion states, Lindsey filed an untimely pro se motion titled Second Amended Motion for New Trial, which argued, in part, that Hoffman was ineffective as his trial counsel. Lindsey later filed a supplemental memorandum in support of his motion. Some of Lindsey's claims against Hoffman had already been addressed by the district court in ruling on Hoffman's motion to withdraw, but some of Lindsey's ineffective assistance of counsel claims against Hoffman were new. In ruling on Lindsey's second amended motion for new trial, the district court construed it as a motion for reconsideration to the extent that some of the claims had already been

22

addressed by the court. The district court denied the additional claims as out of time and as a premature K.S.A. 60-1507 motion. The district court ruled:

> "All right. I'll address first the Second Amended Motion for New Trial. The ineffective assistance of counsel claims, to the extent that they have been explored in requesting new trial, I interpret this to be a motion to reconsider the Motion for New Trial, which has already been denied, and—the additional matters that are raised in the Second Motion for New Trial, I'm going to find that they are out of time. Could have been raised before for one thing. And for another thing, I agree with the State in that a 1507 motion—1507 motion is premature."

As the majority opinion states, neither party challenges the district court's denial of Lindsey's claims that were construed as a motion to reconsider. Instead, the parties contest whether the district court could properly deny an untimely motion for new trial asserting ineffective assistance of counsel claims as a premature K.S.A. 60-1507 motion.

Perhaps, as the majority states, the district court may have had some discretion on whether to address the untimely claims in Lindsey's second amended motion for new trial. But to the extent that the district court had discretion to address the new claims in Lindsey's motion, the court did not seem to be aware of it. I interpret the district court's ruling as a finding that it had no discretion but to deny Lindsey's new claims of ineffective assistance of counsel because the claims were "out of time" and constituted a "premature" K.S.A. 60-1507 motion. But this finding is contrary to our Supreme Court's ruling in *State v. Reed*, 302 Kan. 227, 352 P.3d 530 (2015). In *Reed*, the defendant, before being sentenced, filed an untimely motion for new trial raising an ineffective assistance of counsel claim. Over the State's objection, the district court treated Reed's motion as one filed under K.S.A. 60-1507 and reached the merits of the ineffective assistance of counsel claim after holding an evidentiary hearing. 302 Kan. at 233.

23

On appeal, the *Reed* court stated: "Because Reed had yet to be sentenced, *strictly speaking*, K.S.A. 60-1507 was inapplicable." (Emphasis added.) 302 Kan. at 233. But the court went on to find that the district court could address the untimely claim anyway, finding that an ineffective assistance of counsel claim "is unique." 302 Kan. at 233; see also *State v. Jarmon*, 308 Kan. 241, Syl. ¶ 5, 419 P.3d 591 (2018) (holding untimely motion for new trial asserting ineffective assistance of counsel may be treated as a collateral attack on a judgment under K.S.A. 60-1507); *State v. King*, No. 115,646, 2018 WL 2073524, at *8 (Kan. App. 2018) (unpublished opinion) (finding district court has jurisdiction to address untimely motion for new trial asserting ineffective assistance of counsel), *petition for rev. filed* June 4, 2018; *State v. Denomme*, No. 113,941, 2016 WL 3031252, at *2, 8 (Kan. App. 2016) (unpublished opinion) (reviewing summary denial of untimely motion for new trial asserting ineffective assistance of counsel), *rev. denied* 306 Kan. 1323 (2017); and *State v. Herting*, No. 110,746, 2015 WL 8588057, at *1-2 (Kan. App. 2015) (unpublished opinion) (reviewing, after remand from Supreme Court based on *Reed*, untimely motion for new trial asserting ineffective assistance of counsel), *rev. denied* 305 Kan. 1255 (2016).

Consistent with these decisions, I believe this court should find that the district court erred in the manner that it rejected Lindsey's second amended motion for new trial. Lindsey *could have* waited to raise his new claims of ineffective assistance of trial counsel in a typical postjudgment K.S.A. 60-1507 motion. But he chose to raise the claims in a motion for new trial, and I believe the district court erred in the manner that it summarily rejected the claims. But for the reasons stated herein, it is unnecessary to remand Lindsey's case for an evidentiary hearing because the record conclusively shows that Lindsey is not entitled to relief on his claims.

Under K.S.A. 2017 Supp. 60-1507(b), the district court may summarily deny a motion without holding an evidentiary hearing if "'the motion and the files and records of the case conclusively show that the movant is entitled to no relief.'" *State v. Sharkey*, 299

24

Kan., 87, 95, 322 P.3d 325 (2014) (quoting *Albright v. State*, 292 Kan. 193, 196, 251 P.3d 52 [2011]). The defendant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing and must make more than conclusory contentions in support of the claims. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall have the right to receive the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

In his pro se motion, Lindsey asserted Hoffman provided ineffective assistance of counsel for several reasons, which included (1) failing to impeach witnesses using prior inconsistent statements; (2) failing to investigate S.H.'s prior statement that the former prosecutor on the case, Veronica Dersch, encouraged her to testify falsely; (3) failing to obtain defense experts to testify about the DNA and forensic evidence; (4) failing to conduct an independent investigation of the crime scenes; and (5) failing to obtain a defense expert to testify about penetration to establish the rape charges. Also, at the hearing on the motion, Lindsey asserted that Hoffman cursed him in front of the jury; failed to call any witnesses in his defense; refused to allow him to testify; and failed to communicate adequately with him. I will address each of these claims in turn.

*Failure to impeach witnesses*

Lindsey's motion asserted that Hoffman was ineffective in failing to impeach certain witnesses. Specifically, Lindsey asserted that Hoffman failed to impeach Edward

25

Hines, Terry Hampton, and Michelle Harris using prior inconsistent statements. Hines and Hampton were witnesses who made reports to the police about suspicious activity that led to Lindsey's arrest. Harris was living with Lindsey and their child at an apartment in September 2014, and Lindsey drove her car during the time in question.

In his motion, Lindsey argued Hoffman was ineffective in failing to impeach Hines using his prior inconsistent statements from the preliminary hearing that (1) he could not determine the race of the person later identified as Lindsey or (2) if the person he saw was a man or a women. But the record shows that Hoffman impeached Hines, and he admitted that he stated at the preliminary hearing that he could not tell if the person was a man or a woman. Thus, the record conclusively shows that this claim lacks merit.

Next, Lindsey argued that Hoffman was ineffective in failing to impeach Hampton on his prior inconsistent statements from a previous hearing. Lindsey did not assert what prior inconsistent statements Hoffman should have used, but the record shows that Hoffman impeached Hampton on his ability to recall which day he saw the man—later identified as Lindsey—leave the yellow house and whether he saw the man jump over the fence. Thus, Hoffman did not fail to impeach Hampton using his prior inconsistent statements and the record supports a summary denial of this claim.

Next, Lindsey argued that Hoffman failed to impeach Harris using her prior inconsistent statements to Ashley Lang and Detective Stults-Lindsey. But again, Harris admitted at the trial that she talked to Lang and Stults-Lindsey shortly after the incident. Harris stated that she initially told Stults-Lindsey that she did not have anything to tell her because she did not know anything. Harris also admitted that she did not tell Lang the same story that she testified to at trial but spun her a "tale." Finally, Harris admitted that she initially told the police that she had no concerns about the safety of their child and that Lindsey would not do anything to harm a child. Thus, the record conclusively supports the summary denial of these claims.

26

*Failure to call former prosecutor*

Lindsey's motion argued that Hoffman was ineffective in failing to call the former prosecutor, Dersch, about whether she coached S.H. to identify Lindsey as her attacker. But the district court granted Lindsey's pretrial motion in limine, in part, which prevented S.H. from providing an in-court identification of Lindsey without requesting the district court to conduct an inquiry outside the presence of the jury. At trial, however, S.H. made no in-court identification of Lindsey. Thus, Lindsey can show no prejudice on this claim and the record conclusively shows that Hoffman was not ineffective in failing to call Dersch as a witness about whether she coached S.H. to identify Lindsey as her attacker.

*Failure to obtain defense experts on DNA and forensic evidence*

Lindsey's motion claimed that Hoffman provided ineffective assistance of counsel in failing to obtain an expert to analyze the DNA evidence. But Hoffman stated at the hearing that he did not obtain additional DNA testing on the evidence because he thought that the State's evidence showing a *lack* of Lindsey's DNA at the crime scenes was sufficient. The jury heard from a DNA forensic expert, Tarah Brown, that there was no semen and no male DNA detected on vaginal swabs collected during S.H.'s forensic exam. Brown testified that the only positive DNA findings connected to Lindsey were found on his underwear and pants but that S.H. was *excluded* as a potential contributor. Given the lack of DNA evidence provided by the State at trial, it was unnecessary for Hoffman to call an expert witness to rebut the State's evidence.

Lindsey also asserted that Hoffman was ineffective for failing to hire an expert on cell phone evidence to rebut the State's evidence at trial about Lindsey's cell phone. But Hoffman cross-examined the State's forensic examiner, Patrick Ladd, about his testimony on the evidence collected from the black iPhone identified at trial as Lindsey's. Ladd admitted that he could not tell who was using the cell phone based on the data he

collected. Hoffman also cross-examined Ladd about the accuracy of the cell phone locations. Ladd admitted that many people live in the zones identified in the State's exhibits and that cell phone towers cover up to a 40-mile capacity and overlap each other at times. In short, the cell phone evidence was not damaging to Lindsey at trial and Hoffman was not ineffective for failing to hire an expert witness to rebut the testimony.

*Failure to conduct independent investigation of the crime scenes*

Lindsey's motion included a conclusory allegation that Hoffman's failure to conduct an independent investigation of the crime scenes constitutes ineffective assistance of counsel. But Lindsey pointed to no information to explain how Hoffman's failure to conduct an independent investigation of the crime scenes prejudiced him at trial. Because Lindsey's claim on this point is conclusory and fails to show prejudice, an evidentiary hearing is not warranted.

*Failure to obtain expert witness about penetration*

Lindsey's motion claimed that Hoffman was ineffective in failing to obtain a medical expert on whether S.H. was penetrated by her attacker. At trial, S.H. testified that her attacker raped her at the three different locations on the night in question: in the alley, in the woods, and at the yellow house. The sexual assault nurse examiner (SANE), Jennifer Harris, testified that the injuries to S.H.'s genitalia resulted from multiple blunt force trauma consistent with sexual assault. But Harris could not testify that there was a penetration of the vaginal vault.

The State also published S.H.'s forensic video for the jury at trial. In the video, S.H. stated that her attacker had sex with her three times: once in the alley, in the woods, and at the house where he broke the window. S.H. stated that her attacker touched her

private part with his private part but that it did *not* go inside the line of her private part. S.H. stated she did not remember how it felt and she could not see his private part.

Lindsey does not assert how Hoffman's failure to obtain a medical expert to testify on this issue prejudiced him. The jury reviewed S.H.'s conflicting statements in the forensic interview and her testimony at trial. Hoffman cross-examined S.H. based on her testimony. The SANE nurse testified that she could not tell whether there was penetration of the vaginal vault. Lindsey fails to assert how his case would have been strengthened had Hoffman called another expert to testify about penetration when the State's own expert could not establish penetration. There is no reasonable probability the jury would have reached a different result absent the alleged deficient performance.

*Additional arguments at the hearing*

Lindsey presented several additional arguments at the hearing that were not addressed in the pro se motion. Specifically, Lindsey asserted that Hoffman cursed him in front of the jury, failed to call any witnesses in his defense, refused to allow him to testify, and failed to communicate adequately with him. The district court addressed most of these claims in ruling on Hoffman's motion to withdraw. But the district court did not address Lindsey's claim that Hoffman was ineffective in refusing to allow him to testify.

At the hearing, Hoffman disputed this claim and argued that he gave Lindsey the opportunity up until the last minute to testify. The record also includes the district court's colloquy with Lindsey on his right to testify at trial, after the State rested and before Lindsey presented his case in chief. The district court informed Lindsey that while his attorney may advise him on his right to testify, Lindsey did not have to follow that advice because the decision was his alone whether to testify. Lindsey stated that he understood and that he had no questions about his right to testify. Also, after the defense rested and

before the jury instructions conference, the district court directly asked Lindsey if he wanted to testify. Lindsey replied: "No, Your Honor. No."

To sum up, I find that the district court erred in the manner that it rejected Lindsey's second amended motion for new trial. But the record conclusively shows that Lindsey is not entitled to relief on his claims of ineffective assistance of counsel. Thus, I agree with the majority that Lindsey's convictions should be affirmed.